TOWERS CHARTER & MARINE
CORPORATION, Plaintiff,

v.

CADILLAC INSURANCE COMPANY,
INC., Defendant,

v.

Steven HOFFENBERG, Additional
Defendant on the Counterclaim.

No. 88 CIV 4200 (LBS).

United States District Court,
S.D. New York.

March 31, 1989.

Dreyer & Traub, New York City, for plaintiff and for additional defendant on

the counterclaim; Eugene Mittelman, of counsel.

Jacob, Medinger & Finnegan, New York City, for defendant; Michael Davidson, Michael Jacobs, of counsel.

## OPINION

SAND, District Judge.

This action is before the Court following oral argument on defendant's motion for summary judgment. In brief, plaintiff Towers Charter & Marine Corporation ("Towers") alleges that defendant Cadillac Insurance Company, Inc. ("Cadillac") is in breach of a loan commitment to lend Towers $1,400,000 for the purchase of a 111-foot boat, the Marco Polo. Defendant seeks the dismissal of the complaint, which would release the money that was put in escrow, and repayment of a $225,000 loan made to Towers.

By their own terms, the loan commitment and escrow agreements that are the basis of Cadillac's purported obligation expired on May 31, 1988, when the parties did not close the loan. As stated in paragraph 2(b) of the escrow agreement, which was drafted by Towers' attorneys: "If the Release Letter has not been delivered to us on or before May 31, 1988, then we will deliver the Escrow Funds, together with all interest which is earned on the Escrow Funds, to Cadillac."[1] Towers nonetheless seeks damages or specific performance of the agreements. In order to prevail, Towers must show that its failure to satisfy the conditions precedent to the closing was justified based on either a waiver or modification of the agreements, an anticipatory breach by Cadillac, or a finding that time was not of the essence.

■ Although Towers did not comply with several of the requirements of the loan commitment agreement (e.g., providing Cadillac with a financial statement, an appraisal report and evidence of Towers' title to the Marco Polo), it argues that Cadillac, through its president Ernest Solo-

mon, orally waived or modified some of those requirements. *See, e.g.,* Towers' Rule 3(g) Statement ¶¶ 1, 2, 4, 6, 8, 9 & 12. This claim is predicated on a finding that the alleged oral waivers or modifications are enforceable.

Towers' position, however, runs afoul of New York General Obligations Law § 15–301, which provides in relevant part:

A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

The escrow agreement contains such a provision prohibiting oral waiver or modification (emphasis added):

9. Except as otherwise specifically provided for hereunder, *no party to this Escrow Agreement shall be deemed to have waived any of its rights hereunder ... unless such waiver is in writing and signed by the party waiving said right.* Except as otherwise specifically provided for hereunder, no delay or omission by any party to this Escrow Agreement in exercising any right with respect to the subject matter hereof shall operate as a waiver of such right or of any such other right....

....

11. The parties to this Escrow Agreement have not made any representations, warranties, or covenants which are not set forth herein with respect to the subject matter hereof, and this Escrow Agreement constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Escrow Agreement.

12. *This Escrow Agreement may not be changed, modified, extended, terminated, or discharged orally, but only by*

---

1. Mintz, Fraade & Zeiger, the escrow agent, has instituted an action in New York state court to resolve the competing claims to the escrow

funds; that action is being held in abeyance pending the resolution of this motion.

*an agreement in writing, signed by all of the parties to this Escrow Agreement.*

Accordingly, the agreements between the parties clearly fall within the ambit of § 15–301.

According to *Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926, 366 N.E.2d 1279, 1282 (1977), the basic proposition of § 15–301 is that "if the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls." *See also Schlansky v. United Merchants & Mfrs., Inc.,* 443 F.Supp. 1054, 1059 (S.D.N.Y.1977) (under § 15–301 "any purported oral modifications are wholly ineffective"); *Cliffs Management Corp. v. Great Eastern Management Corp.,* 85 A.D.2d 584, 585, 445 N.Y.S.2d 460, 462 (1st Dept.1981) ("where the only evidence of a modification is oral ... the writing controls").

*Rose* provides for—and Towers cites in the present action—two limited exceptions to the writing requirement, namely partial performance and equitable estoppel.

> Partial performance of an oral agreement to modify a written contract, *if unequivocally referable to the modification,* avoids the statutory requirement of a writing.... Analytically distinct from the doctrine of partial performance, there is the principle of equitable estoppel. Once a party to a written agreement has induced another's *significant and substantial* reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification. Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, *conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written.*

42 N.Y.2d at 341, 344, 397 N.Y.S.2d at 924, 927, 366 N.E.2d at 1281, 1283 (emphasis added) (citations omitted). However, neither doctrine is applicable to the situation before us because Towers has pointed to no conduct "unequivocally referable to the

modification." Every example of conduct that Towers cites in support of its assertions of partial performance and equitable estoppel—e.g., its repairs and improvements to the boat, its payment of the entire loan fee and its borrowing of the $225,000 —is entirely consistent with the agreements as written, including the May 31, 1988 deadline.

■ We find as a matter of law that Cadillac's actions as to the disputed appraisal report were consistent with its rights under the agreements and thus did not constitute an anticipatory breach. The terms of the contract, though inartfully worded, are unambiguous: the appraisal report submitted by Towers had to be satisfactory to Cadillac. Although Cadillac gave timely notice to Towers that the Patton appraisal report that Towers had offered was not satisfactory, Towers never submitted another appraisal. Hoffenberg Affidavit at ¶ 54; Hoffenberg Supplemental Affidavit at ¶ 4. In addition, for reasons known only to Towers, Towers prevented Cadillac's appraiser from gaining access to the boat.

Because we find for Cadillac on Towers' claim of anticipatory breach, we need not reach the issue of whether Towers would have been able to close the loan on that date. We note in passing, however, that we have a serious doubt about whether Towers could have received title to the Marco Polo at that time, given its still-pending litigation in Florida with the seller of the boat.

■ As to Towers' claim that time was not of the essence, we reject Towers' contention that

> [t]his was a more or less open-ended commitment.... I agree Mr. Solomon could have put a fixed separation date but they never even tried to do it, or if they did it they only did it May 25 for a May 31 closing....

Transcript of Oral Argument at 17. Given the fact that the May 31, 1988 expiration date was chosen by Towers' president Steven Hoffenberg, *see* Hoffenberg Affidavit at ¶ 13, and was explicitly stated in the escrow agreement, Towers cannot now

claim that it was unaware of the May 31 expiration date until May 25. Towers' claim of subsequent oral modification of the closing date is rejected in light of § 15–301. Furthermore, it is black-letter contract law that Towers cannot claim that it had a prior oral agreement or understanding with Solomon regarding the closing date that avoided the May 31, 1988 deadline.

Towers also argues that time was not of the essence because the agreements represented only a loan *commitment.* We reject that proposition for the simple reason that parties to a loan commitment agreement, like parties to an actual loan agreement, set deadlines in an effort to limit their liability. Towers' argument to avoid the very deadline that it had set flies in the face of common sense and sound business practice. *Cf. Penthouse Int'l Ltd. v. Dominion Fed. Sav. & Loan Ass'n,* 855 F.2d 963, 976 (2d Cir.1988) ("The parties bargained for a loan commitment that remained open only for a stated duration and we are not at liberty to construe that agreement in a manner inconsistent with its clear language."); *Levine v. Trattner,* 130 A.D.2d 462, 515 N.Y.S.2d 43 (2d Dept. 1987) (holding that time was of the essence in agreement to acquire mortgage commitment).

Accordingly, defendant's motion for summary judgment is granted. Judgment is to enter for defendant dismissing the complaint. The Court also awards defendant judgment on its counterclaim for the amount of the $225,000 loan plus accrued interest because that note, by its terms, became due on May 31, 1988.

Submit judgment.

SO ORDERED.