Arnold D. GOODRIDGE, Plaintiff,

v.

The HARVEY GROUP INC. and Components Plus, Inc., Defendants–Counterclaimants,

v.

Frank FERNANDEZ and Alfonse Daula, Additional Defendants on the Counterclaims.

Arnold D. GOODRIDGE and New Wave Electronics, Inc., Plaintiffs,

v.

The HARVEY GROUP INC. and Components Plus, Inc., Defendants–Counterclaimants,

v.

Frank FERNANDEZ and Alfonse Daula, Additional Defendants on the Counterclaims.

No. 82 Civ. 8691 (MEL), 82 Civ. 8692 (MEL).

United States District Court, S.D. New York.

Jan. 12, 1990.

Bickford, Hahn & Hayes, New York City (Richard E. Hahn, of counsel), for plaintiffs.

Seyfarth, Shaw, Fairweather & Geraldson, New York City (Michael L. Hirschfeld, James E. Brandt, Timothy McInnis, of counsel), for defendants-counterclaimants.

Ferber, Greilsheimer, Chan & Essner, New York City (Robert N. Chan, Robert M. Kaplan, of counsel), for additional defendants on the counterclaims.

LASKER, District Judge.

The Harvey Group, Inc. ("HGI") and Components Plus, Inc. ("CPI") (collectively "Harvey") move for summary judgment against Plaintiffs Arnold D. Goodridge and his wholly-owned company New Wave, Inc. ("New Wave") and Third–Party Defendant Frank Fernandez. Fernandez and Goodridge cross-move for summary judgment against each other. The grounds for these motions are set forth following a brief summary of the complicated series of events surrounding this litigation. For the reasons discussed below Harvey's motion is denied; Fernandez's cross-motion against Goodridge is denied, and Goodridge's cross-motion against Fernandez is granted.

## I.  BACKGROUND

In October 1980 Goodridge and Fernandez were each 50% shareholders and officers of Components Plus, Inc. ("Old CPI"), a New Jersey electronics corporation which distributed semiconductors and other electronic components for military use. Although the company had experienced substantial growth, Fernandez sought to merge with a large public company and told Goodridge that another company had expressed interest in such a merger provided Goodridge would sell his interest in Old CPI. Goodridge agreed and entered into a

Stock Purchase Agreement dated October 22, 1980 (the "Stock Purchase Agreement") by which Fernandez and Old CPI purchased Goodridge's interest in the company for $1,444,000. As part of the transaction Goodridge and Old CPI also entered into an agreement (the "Employment Agreement") by which Old CPI would employ Goodridge for ten years at a salary of $20,000 per year and provide him with health insurance and the use of two leased automobiles in exchange for unspecified business services. Old CPI also agreed to maintain an employee stock option plan ("ESOP") for Goodridge during his employment and to pay him his share upon termination of the plan. Under a third agreement (the "Consulting Agreement") Goodridge's company, New Wave, was to receive $65,000 per year through 1986 and $40,000 per year from 1987 until December 31, 1990 for consulting services. In exchange for "value received" Old CPI gave Goodridge a promissory note in the sum of $141,108 (the "Note"), made payable in monthly installments of $6,520. Finally, Fernandez executed a personal guarantee (the "Guarantee") of "prompt and unconditional payment" of any debts or obligations due under the Note, the Employment Agreement, the Consulting Agreement and the Stock Purchase Agreement.[1]

On June 26, 1981 Old CPI, Fernandez and Alfonse Daula, Old CPI's president, entered into a merger agreement (the "Merger Agreement") with another electronics company, Neboc, Inc. ("Neboc"), and its parent, HGI, pursuant to which a new company was formed, CPI. Fernandez and Daula exchanged their Old CPI stock for shares of CPI and received five-year employment contracts. On August 5, 1981 CPI entered into an agreement (the "Assumption Agreement") to assume the liabilities and obligations which Old CPI had incurred under the agreements with Goodridge. Goodridge received compensation pursuant to the Employment Agreement, the Consulting Agreement and the

Note until CPI terminated payments to him in August 1982.

In March and again in May 1982 a federal grand jury (in St. Louis, Missouri) investigating corruption in the military contracting industry served CPI with subpoenas *duces tecum* to testify and produce business and financial records of Old CPI for the period 1975–1980. Old CPI had been a subcontractor to two targets of the investigation, the McDonnell–Douglas Corporation ("McDonnell–Douglas") and the Emerson Electric Company, Inc. ("Emerson Electric"). In reviewing the records requested by the grand jury, counsel for CPI became aware of irregularities and improprieties in Old CPI's operations. By August 1982 Harvey suspected that Old CPI's records had been falsified to conceal payments made to individual officers and employees of Old CPI and that the concealed funds had been used in part to bribe purchasing agents at McDonnell–Douglas and Emerson. CPI officers also believed that invoices for parts testing necessary to show compliance with military specifications had been falsified by Old CPI officials. CPI suspected that Goodridge was involved in the alleged wrongdoing, and suspended payments which were due to him under the obligations it had assumed from Old CPI.

Goodridge instituted two actions in state court on December 3, 1982 to recover money allegedly owed him by Harvey under the Note, the Employment Agreement and the Consulting Agreement. The actions were removed to this court and consolidated. Harvey counterclaimed against Fernandez and Daula. Fernandez and Daula in turn counterclaimed against Harvey, asserting securities and common law fraud arising out of two allegedly false promises made by Harvey in connection with the Merger Agreement: 1) that Fernandez and Daula would have complete control over CPI following the merger and 2) that the combined sales of HGI and CPI would exceed $100,000,000. Goodridge's complaint against Harvey was dismissed by endorsement dated June 24, 1983.

---

1. Affidavit of Michael L. Hirschfeld, Esq., ("Hirschfeld Affidavit") (Aug. 28, 1987), Exhibit L, Guarantee dated January 21, 1981 made by

Frank Fernandez in favor of Arnold D. Goodridge and New Wave Electronics, Inc. at 7.

In January 1986 the United States Attorney's Office for the Eastern District of New York indicted Goodridge, Fernandez and Roslyn Frank, the former bookkeeper for Old CPI, on several counts charging their participation in a criminal conspiracy to defraud the United States through tax fraud and bribery. On April 11, 1986 Goodridge pled guilty to one count of conspiracy to commit tax evasion and one count of conspiracy to commit tax fraud. Fernandez pled guilty on June 20th of that year to one count of conspiracy to defraud the United States through the payment of unlawful bribes and kickbacks and to one count of tax evasion.

On May 8, 1987 Goodridge and New Wave filed an amended complaint against Harvey seeking recovery of funds due under the Note and damages for breach of the Employment Agreement and the Consulting Agreement. Goodridge also sought to enforce the Guarantee signed by Fernandez of payments due under the Assumed Obligations. Harvey filed an answer and counterclaimed against Goodridge, New Wave and additional defendants Fernandez and Daula. In his answer to plaintiffs' amended complaint, Fernandez asserted additional counterclaims against Goodridge and three new counterclaims against Harvey 1) for indemnification by HGI pursuant to section 6.7 of the Merger Agreement 2) for indemnification by HGI pursuant to the Assumption Agreement and 3) for breach of HGI's agreement to obtain Fernandez's release from his Guarantee of the CPI obligations to Goodridge.

Harvey now moves for summary judgment on all claims asserted against it by Goodridge and New Wave in the amended complaint and by Fernandez in the original and amended complaints. Harvey argues that Fernandez and Goodridge are collaterally estopped from asserting their claims because their pleas of guilty, allocutions and convictions establish that each of them committed federal securities law violations which render the Merger Agreement and all ancillary agreements unenforceable. Goodridge cross-moves for summary judgment against Fernandez for payment under the Guarantee. Fernandez cross-moves to dismiss Goodridge's claim on the Guarantee.

## II. THE COLLATERAL ESTOPPEL EFFECT OF A GUILTY PLEA

Harvey argues that a criminal conviction, whether by jury verdict or by guilty plea, estops the convicted defendant from contesting in a subsequent civil proceeding those matters determined by the conviction. While for some years it has been established in this Circuit that guilty pleas "constitute[ ] estoppel in favor of the *United States* in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case," *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978) (emphasis added), only recently, in *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), did the Court of Appeals hold that a criminal conviction could also have estoppel effect in a civil case in which the Government was not a party. The *Gelb* court held:

Because mutuality of estoppel is no longer an absolute requirement under federal law, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), a party other than the Government may assert collateral estoppel based on a criminal conviction. *See United States v. Frank*, [494 F.2d 145, 160 (2d Cir.), *cert. denied*, 419 U.S. 828 [95 S.Ct. 48, 42 L.Ed.2d 52] (1974) ]. The criminal defendant is barred from relitigating any issue determined adversely to him in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue.

798 F.2d at 43. *See State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1080 (2d Cir.1988) (district court had authority to accord criminal convictions estoppel effect in subsequent civil suit); *Dorman v. Higgins*, 821 F.2d 133, 135–36 (2d Cir.1987).

However, "[j]ust as it is clear that a guilty plea can collaterally estop the relit-

igation of certain issues in subsequent civil litigation, it also is clear that the estoppel extends only to those issues that were essential to the plea." *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790, 802 (D.D.C.1981) (citing *Emich Motors v. General Motors*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951)). In *Hendrickson Bros.*, 840 F.2d at 1080, the Second Circuit Court of Appeals stated that judgments of conviction may have estoppel effect in subsequent civil litigation with respect to issues necessarily determined in the criminal proceedings. *See Dorman*, 821 F.2d at 136. The party asserting collateral estoppel based on a guilty plea has the burden of showing precisely which facts the plea establishes. *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir.1987).

In *Emich Motors* the Supreme Court stated that "estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." 340 U.S. at 569, 71 S.Ct. at 414 (quoting *Frank v. Magnum*, 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969 (1915)).

> In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the verdict. Accordingly, we think plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it is based.
>
> The difficult problem, of course, is to determine what matters were adjudicated in the antecedent suit. A general verdict of the jury or judgment of the court without special findings does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy.

340 U.S. at 569, 71 S.Ct. at 414 (citation omitted). In *Emich* the Court held that it is the responsibility of the trial judge in a subsequent civil case to ascertain what was determined in a prior criminal trial for the purpose of determining the extent to which estoppel applies in a civil case under § 5 of the Clayton Act, 15 U.S.C. § 16. The Court reversed the Court of Appeals, which had ruled that a criminal conviction alone established prima facie evidence of a civil conspiracy. The rationale for compelling a close examination by the trial court of what issues were essential to or necessarily decided by a jury verdict in a criminal trial for civil estoppel purposes is even more persuasive where the court must decide what issues were essential to a guilty plea made without any of the charges in the indictment actually being tried. In sum, Harvey must demonstrate that the facts upon which he asserts estoppel were essential to the pleas of Fernandez and Goodridge.

### A. The Fernandez Guilty Plea

Harvey argues first that the cross-claims of Fernandez are barred by estoppel because the necessarily determined elements of Fernandez's plea constitute, *inter alia*, a violation of Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5,[2] which renders the Merger Agreement, the Assumption Agreement and all ancillary agreements unenforceable against Harvey because under New York Law Fernandez cannot benefit from his own fraud. *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960). Fernandez answers that the facts essential to and the issues determined by his guilty plea relate

**2.** SEC Rule 10b–5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

only to his filing of false personal income tax returns and supporting documents for the years 1979–81 and that, accordingly, the plea does not establish any of the elements of a 10b–5 violation. Fernandez pled guilty to counts One and Twelve of the Indictment. Count One charged Fernandez and Goodridge with conspiracy to defraud the United States in violation of 41 U.S.C. § 51 [3] by preventing the Internal Revenue Service from discovering the actual business expenses of Old CPI and the actual taxable personal income of Fernandez and Goodridge. It alleged that Fernandez and Goodridge set up fictitious corporations with friends and relatives as officers and that Goodridge and Fernandez then issued Old CPI checks to these corporations for fictitious services. The Indictment alleges that the monies would then be paid to Goodridge and Fernandez in cash or by check. It also charged the defendants with preparing false tax returns for Old CPI which improperly deducted these payments as legitimate business expenses, and with preparing false personal income tax returns which did not include the payments as income.

Count Twelve of the Indictment charged Fernandez with knowingly and wilfully attempting to evade federal income taxes by filing a false return in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.

■ The five elements of a Rule 10b–5 violation which must be established by Harvey are: 1) a fraudulent scheme or misleading or untrue statement or omission with regard to a material fact, 2) in connection with the purchase of a security, 3) upon which the defrauded party detrimentally relies, 4) which is made with scienter and 5) promulgated through the use of the mails or any facility of a national securities exchange. *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1047–48 (2d Cir.1985); *Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 890 (S.D.N.Y.1986). Harvey asserts that Fernandez's plea establishes all of these elements.

### 1. Material Misstatements or Omissions

■ As to the first element, Harvey asserts that Fernandez's plea establishes that he made material misrepresentations and omissions in the Merger Agreement regarding Old CPI's finances. First, Harvey cites the following portion of Fernandez's allocution to support its claim that Fernandez made a material misrepresentation:

The Court: You will have to tell me in your own words what you did in respect to Count 1.

Mr. Fernandez: Which is that?

The Court: The conspiracy between January '75 and December of '82 within the Eastern District of New York, what did you do with regard to the conspiracy?

Mr. Fernandez: We prepared false tax tables.

The Court: With whom?

Mr. Fernandez: Ross Frank, Arnold Goodrich. [sic]

The Court: And did you know they were false statements?

Mr. Fernandez: Yes.

The Court: And did you know it was wrong?

Mr. Fernandez: Yes.

The Court: [Is the] Government satisfied with [Count] one? [4]

At that point in the allocution Assistant United States Attorney Kevin O'Brien and Fernandez's attorney, Harold Fahringer, intervened to direct Fernandez's attention to three specific overt acts described in the indictment, all of which pertained to the

---

**3.** 41 U.S.C. § 51 *et seq.* is known as the "Anti-Kickback Act of 1986." 41 U.S.C. § 53 states:
It is prohibited for any person—
(1) to provide, attempt to provide, or offer to provide any kickback;
(2) to solicit, accept, or attempt to accept any kickback; or
(3) to include, directly or indirectly, the amount of any kickback prohibited by clause (1) or (2) in the contract price charged by a subcontractor to a prime contractor or a higher tier subcontractor or in the contract price charged by a prime contractor to the United States.

**4.** Hirschfeld Affidavit, Exhibit U, Transcript of June 20 1986 guilty plea allocution of Frank Fernandez at 12–13.

filing of false personal income tax returns.[5] Defendants assert that Fernandez's admission that he filed false tax "tables" establishes that he misrepresented the financial records of Old CPI prior to the Merger Agreement because he warranted that Old CPI had paid all its taxes.

However, when considered in context, Fernandez's admission to preparing false tax tables with Goodridge was incidental, not essential or necessary, to his plea to Counts One and Twelve. Had Fernandez been queried more specifically at the outset he might never have mentioned the preparation of false tax "tables." Moreover, the allocution fails to specify which tax "tables" were falsified. Such an unspecific and incidental admission hardly establishes a material misrepresentation regarding the tax or financial status of Old CPI. Defendants have not specified any other facts essential to the plea which would constitute material misrepresentations or false statements. Moreover, Fernandez asserts that he made no false statements or misrepresentations about facts material to the Merger Agreement. Accordingly, Harvey has not established that there is no genuine issue of material fact on this issue.

The second branch of Harvey's argument is that Fernandez's failure to disclose to Harvey the existence of and his participation in the conspiracy to which he pled guilty in Count One constitutes a material omission. The standard for determining the materiality of omissions on motions for summary judgment was established by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976):

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... Put another way, there must be a substantial likelihood that the disclosure of the omitted

fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

> ... The determination requires delicate assessments of the inferences a "reasonable shareholder" would draw ... and these assessments are peculiarly ones for the trier of fact. Only if the established omissions are "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality" is the ultimate issue of materiality appropriately resolved "as a matter of law" by summary judgment. *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (CA4 1970).

*Id.* at 449–50, 96 S.Ct. at 3132–33. Harvey asserts that the materiality of Fernandez's failure to mention his role in the conspiracy charged in Count One of the indictment ultimately brought against him is established as a matter of law because that omission represents a clear breach of several warranties of the truthfulness and accuracy of Old CPI's finances contained in the Merger Agreement.[6] Harvey asserts that had it known of Fernandez's participation in the conspiracy to which he pled guilty, the "total mix" of information available to Harvey would have been altered, and it might never have agreed to the merger. To prevail on this claim under *Northway,* Harvey must show that: "established omissions are 'so obviously important ... that reasonable minds cannot differ on the question of materiality.'" 426 U.S. at 450, 96 S.Ct. at 2133 (quoting *Johns Hopkins,* 422 F.2d at 1129).

In support of the argument that Fernandez's alleged omission is established Harvey states: "The falsification of Old CPI's books and records, including falsification intended to conceal the fact that funds had been improperly withdrawn from Old CPI

---

5. Hirschfeld Affidavit, Exhibit U, Transcript of June 20 1986 guilty plea allocution of Frank Fernandez at 13–15. Fernandez admitted to filing false personal income tax returns for the calendar years 1979, 1980 and 1981 which omitted a combined total of $430,602 in taxable income.

6. Hirschfeld Affidavit, Exhibit M, Agreement and Plan of Merger, dated June 26, 1981, at § 3.5–3.9.

as 'business expenses,' is admitted."[7] However, as discussed above, the unspecified admission by Fernandez that he and others prepared false tax "tables" as part of a conspiracy to defraud the United States in violation of 41 U.S.C. § 51 does not establish, as a matter of law, that Fernandez made a material omission or that any of the warranties in the Merger Agreement were thereby breached. This issue was not essential to, and thus not determined by, Fernandez's guilty plea, which focused on personal income tax evasion.

Although Fernandez, unlike Goodridge, did not specifically delineate that portion of Count One to which he was pleading, the Second Circuit Court of Appeals has held that a plea of guilty to a general conspiracy count does not establish guilt with respect to every overt act charged in the indictment. *United States v. Guzzone*, 273 F.2d 121, 123 (2d Cir.1959). Nor does such a plea establish the "specific manner by which [the] conspiracy was effectuated." *Alsco–Harvard Fraud Litigation*, 523 F.Supp. at 804. In sum, Fernandez's plea of guilty does not establish a material misrepresentation or omission which is the first element of a Rule 10b–5 violation.

### 2. Detrimental Reliance

Nor does the guilty plea establish the third element, detrimental reliance. Harvey fails to indicate how it relied on the unspecified omissions and misrepresentations allegedly made by Fernandez. To establish reliance Harvey must show that Fernandez's fraudulent conduct was a " 'substantial,' i.e. a significant contributing cause of the alleged injury" (in this case the decision to enter the Merger Agreement). *Wilson v. Comtech Telecom. Corp.*, 648 F.2d 88, 92 (2d Cir.1981) (quoting *Herzfeld v. Laventhol, et al.*, 540 F.2d 27, 34 (2d Cir.1976)). Harvey contends that reliance is conclusively established by a provision of the Merger Agreement which states:

Accordingly, in consideration of the promises and in reliance upon the mutual representations, warranties, covenants and agreements hereinafter set forth, and upon the terms and subject to the conditions hereinafter set forth, the parties agree as follows:

Hirschfeld Affidavit, Exhibit M, Agreement and Plan of Merger at 1. This boilerplate language fails to establish that Fernandez's alleged misrepresentations amounted to a substantial or significant contributing cause of HGI's decision to consummate the Merger Agreement. Reliance has not been demonstrated.

Moreover, Fernandez persuasively argues that in all the cases cited by Harvey to support its contention that the criminal plea has estoppel effect in subsequent civil litigation, the civil claim arose directly from the substantive criminal violation to which the defendant pled. In *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978), for instance, a former congressman pled guilty to charges of conspiracy and improper lobbying and the Government then brought a civil action to impress a constructive trust on monies earned from the lobbying activities which the defendant admitted in his plea. In *United States v. $15,896.00 in U.S. Currency*, 545 F.Supp. 92, 93 (N.D.N.Y.1982), the court held that, where the Government brought a forfeiture action against a defendant who earlier pled guilty to charges of failing to report monies in excess of $5,000 which he transported into the United States, the defendant was estopped from making a claim that he did not know of or intend to hold a written declaration of currency that was in his possession.

In contrast to these cases, in the case at hand Harvey argues that Fernandez's plea establishes a violation of a statute not charged in the indictment and not pled to, and that the plea estops Fernandez from bringing his related counterclaims. Harvey's argument is an unwarranted expansion of the collateral estoppel doctrine.

---

**7.** Defendants–Counterclaimants' Memorandum Of Law In Support Of Their Motion For Summary Judgment Dismissing Plaintiffs Complaint And The Counterclaims Of Additional Counterclaim Defendant Fernandez (Aug. 21, 1987) at 38.

## B. *The Goodridge Plea*

■ Harvey argues that Goodridge is estopped from asserting his claims for payments due under the Assumption Agreement because Goodridge's plea establishes that he aided and abetted Fernandez's alleged 10b–5 violation. The elements of this aiding and abetting charge are: (1) the existence of a securities law violation by the primary party, (2) knowledge of the aider and abettor of the violation and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *IIT, An Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980). As discussed above, Harvey has failed to establish that Fernandez committed a Rule 10b–5 violation. Therefore, it cannot establish the first element of an aiding and abetting violation by Goodridge. The issues upon which Harvey asserts estoppel against Fernandez and Goodridge were not decided by their pleas. Accordingly, Harvey's motion is denied.

## III. THE GUARANTEE

Fernandez and Goodridge have made cross-motions for summary judgment on the Guarantee. Fernandez's motion is premised upon Harvey's motion for summary judgment being granted. Fernandez asserts that if the court grants summary judgment to Harvey, then Goodridge's fraudulent conduct would be established and Goodridge would be barred from recovering on the Guarantee under the doctrine of *in pari delicto.* Because Harvey's motion for summary judgment is denied, and Goodridge's conduct has not been found to be fraudulent, Fernandez's motion for summary judgment is necessarily denied.

Goodridge asserts that the Guarantee signed by Fernandez is an unconditional obligation to insure that Goodridge receives compensation due under the Note, the Employment Agreement and the Consulting Agreement and that because in August 1982 Harvey suspended payments due to him under those agreements, Fernandez owes him $635,416.33 plus interest from August 31, 1982. Fernandez opposes Goodridge's motion upon the grounds that a) Goodridge is estopped from seeking enforcement of the Guarantee because even after Harvey had suspended payments to him Goodridge made oral promises not to enforce it, b) there are triable issues of material fact regarding whether Goodridge fraudulently induced Fernandez to execute the Guarantee by failing to disclose improper conduct that led Harvey to renege on its obligations to Goodridge, and c) it is the "law of the case" that triable issues of fact regarding fraudulent inducement exist and, accordingly, Goodridge's claims on the Guarantee might eventually be barred by the doctrine of *in pari delicto.*

## A. *Promissory Estoppel*

Fernandez asserts that Goodridge represented that he would not enforce the Guarantee and that "it was always the intention of Goodridge and me that ... [CPI] would assume the obligations now sued upon by plaintiffs and ... plaintiffs would not look to me to satisfy those obligations." [8] Fernandez contends that he would never have agreed to sign the Guarantee if he had believed that Goodridge would seek to enforce it.

The Guarantee, according to Fernandez, was requested by Goodridge to give "an appearance of substance" to Fernandez's purchase of Goodridge's interest in Old CPI so that the contemplated Merger Agreement with Neboc could proceed. Fernandez Declaration, ¶ 23. Neboc and its parent company, HGI, allegedly had indicated that they would not purchase Old CPI if Goodridge remained active in the company. Fernandez states: "It was contemplated by all parties, including Goodridge, that the deferred obligations would be paid by Harvey." *Id.* In December 1982 Goodridge and one of his attorneys, Norman Roy Grutman, met with Fernandez and reiterated that Goodridge would not seek to enforce the Guarantee against Fernandez. *Id.* at ¶ 25. Fernandez also argues that Goodridge's initial failure to

---

**8.** Declaration of Frank Fernandez In Opposition To Plaintiffs' Cross–Motion For Summary Judg- ment ("Fernandez Declaration"), dated Nov. 13, 1987 at ¶ 15.

name him as a party or to even mention the Guarantee in the action brought by Goodridge in state court to seek enforcement of Harvey's obligations under the Employment Agreement and the Consulting Agreement shows that Goodridge did not intend to enforce the Guarantee.

Fernandez asserts that he relied on Goodridge's promise not to enforce the Guarantee and that had he known that Goodridge would litigate the issue he would not have expended $60,000 in legal fees defending, along with Goodridge, against Harvey's claims. Fernandez Declaration, ¶ 29.

Goodridge categorically denies that he ever made any such promises not to enforce the Guarantee.[9] While this denial appears to present a genuine issue of material fact, Goodridge argues that Fernandez's affirmative defense of estoppel is legally barred because the parol evidence rule prohibits "proof of prior oral statements to alter or refute the clear meaning of unambiguous terms of written, integrated contracts to which assent has voluntarily been given." *Azuma N.V. v. Sinks,* 646 F.Supp. 122, 127 (S.D.N.Y.1986). Goodridge contends that the Guarantee is a fully integrated written agreement the unambiguous terms of which provide that it is an unconditional guarantee of payment under the Assumption Agreement and related agreements discussed above.

■ Specifically, Goodridge argues that because the Guarantee expressly provides that "[n]o executory agreement shall be effective to change or modify ... this Guarantee unless such executory agreement is in writing and signed by Goodridge,"[10] and there is no dispute that Goodridge and Fernandez never entered such a written executory agreement to change or modify the Guarantee, New York General Obligations Law § 15–301 (McKinney 1989) bars oral modification. Section 15–301 provides in relevant part:

1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

However, New York law provides an exception to section 15–301 where equitable estoppel is asserted.

Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification.... [The] conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written.

*Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 397 N.Y.S.2d 922, 927, 366 N.E.2d 1279, 1283 (1977) (citations omitted). Accordingly, for Fernandez's defense of estoppel to survive Section 15–301's bar to oral modification of a written contract expressly preventing such modification, he must show 1) "significant and substantial reliance" upon the oral modification and 2) that the conduct relied upon to establish estoppel was otherwise incompatible with the Guarantee. *See Towers Charter & Marine Corp. v. Cadillac Insurance Co.,* 708 F.Supp. 612, 614 (S.D.N.Y.1989) (granting summary judgment under *Spa Realty* against plaintiff asserting estoppel because conduct relied upon to establish estoppel was consistent with underlying agreement).

Fernandez asserts that in reliance on the promises by Goodridge and his attorney not to enforce the Guarantee, he expended more than $60,000 in legal fees litigating the counterclaims by Harvey charging fraudulent conduct by Fernandez. Fernandez Declaration, ¶ 29. It is not clear and Fernandez has not shown that this reliance upon Goodridge's alleged oral promise is either "significant and substantial" or otherwise incompatible with the Guarantee. Fernandez unpersuasively argues that had

---

**9.** Reply Declaration of Arnold Goodridge in Further Support of Motion For Summary Judgment Against Frank Fernandez on the Guarantee, at ¶ 11 (Dec. 16, 1987).

**10.** Hirschfeld Affidavit, Exhibit L, Guarantee dated January 21, 1981 made by Frank Fernandez in favor of Arnold D. Goodridge and New Wave Electronics, Inc. at 7.

he known Goodridge would break the alleged oral promise not to enforce the Guarantee Fernandez would not have expended these funds to litigate against Harvey. However, it is more than likely that even if Goodridge had said nothing about the Guarantee or had sought to enforce it, Fernandez would still have litigated against Harvey's counterclaims alleging Fernandez's liability for fraud. This is especially so in light of the millions of dollars in damages requested by Harvey against Fernandez and the seriousness of the allegations contained in Harvey's complaint.

Moreover Fernandez's decision to incur legal expenditures litigating against Harvey does not appear to be incompatible with his obligations under the Guarantee. Accordingly, because Fernandez has not shown "significant and substantial" reliance or that such reliance was incompatible with the Guarantee, the exception to the application of Section 15–301 is not applicable and Fernandez's defense of promissory estoppel is legally barred.

## B. *Fraudulent Inducement*

Fernandez contends that Goodridge's motion must be denied because there are material fact questions about whether the Guarantee was fraudulently induced by Goodridge's misrepresentations. Under New York law, the elements of a claim of fraudulent representation are: representation of a material fact, falsity, scienter, deception and injury. *DuPont v. Brady*, 646 F.Supp. 1067, 1075 (S.D.N.Y.1986). Fernandez relies upon the following allegations in Harvey's motion papers to establish a genuine factual dispute concerning Goodridge's fraud: Goodridge made illegal payments to customers and suppliers of Old CPI, falsified books and records, and rigged bids. Fernandez asserts that had he known that this conduct had occurred and that when it was revealed it would cause Harvey to renege on the Assumption Agreement, he would never have signed the Guarantee.

Fernandez has failed to produce any facts in his own papers that would create a genuine material factual dispute regarding possible fraud in the execution of the Guarantee. More importantly, however, his defense of fraudulent inducement is barred under New York law by the unconditional nature of the Guarantee. In *Citibank v. Plapinger*, 66 N.Y.2d 90, 95, 495 N.Y.S.2d 309, 312, 485 N.E.2d 974, 977 (1985) a unanimous New York Court of Appeals held that defendants were barred from asserting the defense of fraudulent inducement in an action on a guarantee where:

> they themselves have denominated their obligation unconditional, and have reinforced that declaration by their agreement that the "absolute and unconditional" nature of their guarantee was "irrespective of (i) any lack of validity * * * of the * * * [guaranteed obligation] or any other agreement or instrument relating thereto", or "(vii) any other circumstance which might otherwise constitute a defense" to the guarantee.

*See Midwest Corp. v. Global Cable, Inc.*, 688 F.Supp. 872, 875 (S.D.N.Y.1988); *Marine Midland Bank v. CES/Compu–Tech, Inc.*, 147 A.D.2d 396, 537 N.Y.S.2d 818, 819–20 (1st Dep't 1989). Similar to the guarantee described in *Citibank* the Guarantee signed by Fernandez states:

> This Guarantee shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (i) the validity, regularity or enforceability of the Stock Purchase Agreement, the [Old CPI] Note, the Employment Agreement, the Consulting Agreement ... (iv) any defense, setoff or counterclaim which may at any time be available to or asserted by [Old CPI] against Goodridge ... or (v) any other circumstance whatsoever (with or without notice to or knowledge of [Old CPI] or the Guarantor) which constitutes, or might be construed to constitute, in bankruptcy or in any other instance, an equitable or legal discharge of [Old CPI] for the Obligations or of the Guarantor under this Guarantee.[11]

---

**11.** Hirschfeld Affidavit, Exhibit L, Guarantee dated January 21, 1981 made by Frank Fernandez in favor of Arnold D. Goodridge and New Wave Electronics, Inc at 3–4.

Fernandez contends that the Guarantee which he signed, unlike the guarantee described in *Citibank*, contained no disclaimer of defenses available to the guarantor regarding the guarantee, but only a disclaimer of defenses available to Old CPI. However, this distinction is unpersuasive given the broad and unconditional nature of the language of the Guarantee quoted above. Most important to the court's holding in *Citibank* was that the guarantee by its own terms was "absolute and unconditional;" that the guarantee also stated that this was so irrespective of other possible defenses was merely additional support for the decision. 495 N.Y.S.2d at 312, 485 N.E.2d at 977. In sum, there is no genuine issue of material fact regarding fraudulent inducement and in any event, this defense is legally barred under *Citibank*.[12]

### C. *Law of the Case/In Pari Delicto*

 Fernandez argues that it is "the law of the case" that there are triable issues of material fact regarding Goodridge's alleged fraudulent conduct. If Goodridge committed the alleged fraud, according to Fernandez, he would be barred from enforcing the Guarantee under the doctrine of *in pari delicto*.[13] Fernandez cites the two-page opinion in this case dated June 23, 1983, in which Goodridge's motion for summary judgment on the Note was denied. That opinion is not the "law of the case" with regard to Goodridge's present claim on the Guarantee, which is contained in Goodridge's Amended Complaint filed four years after the 1983 opinion. Moreover, for the same reasons that the defense of fraudulent inducement is not available to Fernandez, the doctrine of *in pari delicto* is similarly inapplicable.

\*     \*     \*     \*     \*     \*

For the reasons stated above, Goodridge's cross-motion for summary judgment on the Guarantee is granted and Fernandez's cross-motion on the Guarantee is denied. Harvey's motion for summary judgment is denied.

It is so ordered.

---

**12.** The decision to bar Fernandez's defense of fraudulent inducement is contrary to dicta in the opinion of the Appellate Division, First Department in *Goodridge v. Fernandez*, 121 A.D.2d 942, 505 N.Y.S.2d 144, 147 (1st Dep't 1986). In that case the court affirmed a lower court's decision to grant Fernandez's motion to stay the initial action brought by Goodridge on the Guarantee pending resolution of the case removed to this court. However, the court also stated in dicta that *Citibank* did not bar Fernandez's de-

fense of fraudulent inducement. The state court admitted that the issue was close and "troublesome." *Id.*

**13.** "The doctrine [of *in pari delicto*] denies judicial relief, in the form of either enforcement or rescission, to parties to illegal contracts." *In re Leasing Consultants Inc.*, 592 F.2d 103, 110 (2d Cir.1979) (citations omitted).