CLUB HAVEN INVESTMENT
COMPANY, LLC,
Plaintiff,

v.

CAPITAL COMPANY OF AMERICA,
LLC, f/k/a Nomura Asset Capital
Corp, Defendants.

Capital Company of America
LLC, Counter–Plaintiff,

v.

Club Haven Investment Company LLC,
Counterclaim–Defendant.

and

H.V. McCoy, Jr., Additional Defendant
on Counterclaim.

No. 98 Civ. 8564(MBM).

United States District Court,
S.D. New York.

April 6, 2001.

Daniel L. Carroll, Leigh A. Roveda, Hutton Ingram Yuzek Gainen Carroll & Bertoloff, New York, NY, for Plaintiff.

A. Robert Pietrzak, Nicholas H. De Baum, David S. Grossman, Brown & Wood, New York, NY, for Defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

In this diversity action, plaintiff Club Haven Investment Company LLC sues defendant Capital Company of America[1] ("CCA") for breach of contract. CCA moves to dismiss plaintiff's second amended complaint (the "Complaint") under Fed. R.Civ.P. 12(b)(6). For the reasons stated below, CCA's motion is denied.

## I.

For the purposes of deciding CCA's motion to dismiss, the material facts alleged in the Complaint are taken as true. *See Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030, (1964). On May 13, 1998, Club Haven and CCA entered into a Loan Commitment Agreement (the "Commitment") whereby CCA agreed to lend money to Club Haven at a specified interest rate. (Compl.¶6) The Commitment provided that, if the loan was not closed by July 13, 1998, the Commitment would "be of no further force and effect." (Pietrzak Aff., Ex. C) The Commitment further provided that its provisions could not be waived or modified "unless such waiver or modification [was] in writing." (*Id.*)

By written agreement, the parties extended the July 13, 1998 expiration date to July 31, 1998. (Compl.¶12) The expiration date subsequently was extended beyond July 31, 1998 by oral agreement of the parties. (*Id.* ¶¶13–15) According to the Complaint, CCA told Club Haven that "no written extension agreement was required," and "confirmed ... on August 31, 1998 that the Commitment remained in full force and effect and that [CCA] intended to close the loan in accordance with the Commitment." (*Id.*)

In reliance on CCA's assurances that the Commitment remained in effect, Club Haven continued to work toward closing the loan by performing due diligence tasks, including the exchange of numerous documents and other information with CCA. (*Id.* ¶18) Club Haven also alleges that, as a result of CCA's assurances, Club Haven failed to seek alternative financing and incurred expenses for attorneys' fees and

---

**1.** CCA, formerly known as Nomura Asset Capital Corporation ("Nomura"), was formed in June of 1998 for the purpose of taking over Nomura's business. (Complaint ¶7) CCA succeeded in interest to Nomura's commitments and obligations to plaintiff. (*Id.*) Accordingly, I refer in this opinion to both CCA and Nomura as CCA.

reports in connection with the closing. (*Id.* ¶¶ 31, 36)

On September 11, 1998, CCA informed Club Haven that, because the Commitment had expired on July 31, 1998, CCA was no longer obligated to fund the loan. (*Id.* ¶ 23) Club Haven brought this action alleging breach of contract. CCA now moves to dismiss the Complaint pursuant to Rule 12(b)(6).

## II.

■ CCA argues that the Complaint should be dismissed because the oral agreements extending the expiration of the Commitment beyond July 31, 1998 are invalid under New York General Obligations Law § 15–301(1) (McKinney 1999).[2] This section provides that "[a] written agreement ... which contains a provision to the effect that it cannot be changed orally, cannot be changed by executory Commitment unless such executory Commitment is in writing and signed by the party against whom enforcement of the change is sought." Although the oral extensions of the July 31, 1998 deadline appear to fall within the reach of § 15–301, *see Towers Charter & Marine v. Cadillac Ins. Co.*, 894 F.2d 516 (2d Cir.1990) (holding that § 15–301 precludes oral modifications and waivers when both are precluded by underlying contract), Club Haven argues that § 15–301 is inapplicable under the doctrines of partial performance and equitable estoppel. *See Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977) (discussing partial performance and equitable estoppel exceptions to § 15–301).

■ To benefit from the partial performance exception to § 15–301, a plaintiff must prove (i) conduct that is "unequivocally referable" to the oral modification, and (ii) that the conduct conferred some benefit on the party against whom enforcement is sought. *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113 (2d Cir.1998); *Rose*, 42 N.Y.2d at 344–45, 397 N.Y.S.2d at 926–27, 366 N.E.2d 1279. Here, although Club Haven has alleged conduct which arguably satisfies first prong of the partial performance exception, it has failed to allege that CCA benefitted in any way from that conduct. Accordingly, Club Haven cannot avoid the application of § 15–301 on the basis of partial performance.

■ However, Club Haven has alleged facts sufficient to satisfy the equitable estoppel exception to § 15–301. Under the doctrine of equitable estoppel, a party to a written agreement who has "induced another's significant and substantial reliance upon an oral modification" will be estopped from invoking § 15–301. *Rose*, 42 N.Y.2d at 344–45, 397 N.Y.S.2d at 926–27, 366 N.E.2d 1279. Similar to the requirement that partial performance be "unequivocally referable" to the oral modification, a party seeking to invoke equitable estoppel must show conduct that is not compatible with the underlying written agreement. *Id.*

Here, Club Haven's allegations are sufficient to satisfy the equitable estoppel exception. First, Club Haven alleges that it relied on CCA's oral assurances by, *inter alia*, incurring expenses for attorneys' fees and reports in connection with the closing. (Compl.¶¶ 31, 36) Moreover, Club Haven alleges that, following the expiration of the July 31, 1998 deadline, it continued to

---

**2.** The parties' briefs cite only New York law, reflecting an apparent assumption that New York law controls. Such "implied consent ... is sufficient to establish choice of law." *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989).

work toward closing the loan in several ways, including by performing numerous due diligence tasks. (Compl.¶ 18) Such conduct, if proved, is wholly inconsistent with the July 31, 1998 expiration of the Commitment and can be explained only by reference to the alleged oral extensions.

CCA argues that Club Haven's allegations of due diligence are insufficient as a matter of law to satisfy the equitable estoppel exception to § 15–301. However, the cases on which CCA relies do not support this conclusion. In *LaMotte v. Nat'l Patent Dev. Corp.*, No. 95 Civ. 3317, 1996 WL 492998 (S.D.N.Y. Aug.28, 1996), for example, the Court held that the plaintiff's due diligence in connection with the purchase of land was consistent with his underlying contractual obligation to buy the land and was not "unequivocally referable" to an oral agreement extending his option to terminate the contract. Unlike the plaintiff in *LaMotte,* whose obligation to purchase the land remained intact at the time of his due diligence activities, Club Haven had no right to close the loan under the terms of the Commitment following the July 31, 1998 deadline and, accordingly, would have had no reason to continue due diligence but for the oral extensions.[3]

CCA relies also on *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113 (2d Cir.1998). There, the third-party plaintiffs executed closing documents and the underlying agreement for the transaction at the same time. Two days later, on the day of the scheduled closing, the third-party defendant pulled out of the transaction, and the third-party plaintiffs brought a counterclaim for breach of contract. The Court dismissed the plaintiffs' claim, holding that the execution of documents was only "preparatory conduct" looking toward the agreement. *Id.* at 123.

Unlike the third-party plaintiffs in *Argenti,* there is no evidence or allegation that Club Haven, in performing its due diligence, was working toward a new or different commitment agreement. Rather, Club Haven's conduct can be explained only by reference to the alleged oral extensions of the July 31, 1998 deadline and therefore satisfies the equitable estoppel exception to § 15–301.

Although it is possible that additional facts will be adduced in discovery or at trial that will alter this conclusion, I cannot say that Club Haven "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 41 (2d Cir.1997). Club Haven has alleged facts sufficient to support the conclusion that its due diligence was unequivocally referable to the oral extensions of the July 31, 1998 deadline. Accordingly, dismissal is inappropriate at this time.

\*    \*    \*    \*    \*    \*

For the reasons set forth above, CCA's motion to dismiss Club Haven's Complaint is denied.

---

**3.** The other due diligence case on which CCA relies, *Towers Charter & Marine v. Cadillac Ins. Co.,* 708 F.Supp. 612 (S.D.N.Y.1989) is unpersuasive. Although the Court held that the plaintiff's conduct was consistent with the underlying written agreement, the opinion does not disclose the terms of that agreement.