See also 712 F.Supp. 1123.

Joseph Bartfield, New York City, for plaintiff.

Rosner and Goodman, New York City, for defendant; Andrew J. Goodman and Jeffrey H. Hirsch, of counsel.

### OPINION

SWEET, District Judge.

Plaintiff Ecoban Capital Limited ("Ecoban") has moved pursuant to Fed.R.Civ.P. 56 for summary judgment against defendant Donald J. Ratkowski ("Ratkowski"). Upon the facts and conclusions set forth below, Ecoban's motion for summary judgment is granted.

*Facts*

Certain of the facts relevant to this case are set forth in this court's opinions in related cases, *Bruce v. Martin,* 691 F.Supp. 716 (S.D.N.Y.1988) and *Thornock v. Kinderhill,* 702 F.Supp. 468 (S.D.N.Y. 1988), familiarity with which is assumed.

The following facts are undisputed. On or about December 18, 1985, Ratkowski

---

**ECOBAN CAPITAL LIMITED, Plaintiff,**

v.

**Donald J. RATKOWSKI, Defendant.**

**No. 88 Civ. 5848 (RWS).**

United States District Court, S.D. New York.

May 18, 1989.

executed and delivered his negotiable promissory note in the principal sum of $300,000 (the "Note") to a limited partnership, Kinderhill Farm Breeding and Racing Program —1985 Series III ("Kinderhill"). Pursuant to the terms of the Note, Ratkowski agreed to pay interest in semi-annual installments on the last day of March and September of each year through March 31, 1991, at which time the principal amount of the Note would be due and payable. Ratkowski paid all sums due under the Note through September, 1987.

On October 28, 1987, Ecoban loaned $1,849,000 to Kinderhill Select Bloodstock, Inc. ("Select"), to which the assets of the Kinderhill limited partnership had been transferred in exchange for Select common stock. As security for the loan, Ecoban became the holder of a number of investor Notes, including Ratkowski's, pursuant to a series of agreements (the "Loan Agreements"). To further secure the loan, Select issued a promissory note to Ecoban for the loan amount, due April 30, 1991; Ecoban reserved to Select's credit approximately 33% of the loan proceeds; Ecoban received a Negative Pledge from Kinderhill entities promising that they would not further encumber the Kinderhill Farm in Old Chatham, New York; Ecoban was given the right, on notice, to attach a portion of Kinderhill's bank account at Key Bank, to the extent of any default; and Ecoban received Martin's 100% full recourse guaranty.

Schedule 4.12 to the Loan Agreement between Ecoban and Kinderhill disclosed potential fraud claims against the Kinderhill Limited Partnerships which were ultimately asserted in *Bruce v. Martin,* and Ecoban's senior officer in the Kinderhill transaction, Gabriel Zalka ("Zalka"), admitted having received and reviewed Schedule 4.12 prior to closing the transaction with Kinderhill.[1] Moreover, Ecoban conducted due diligence of Kinderhill, including a review of the Kinderhill Private Placement Memorandum and Financial Statements, and requested makers of the Notes to execute an estoppel letter to effect a waiver of certain legal defenses, including a fraudulent inducement defense. Further, Ecoban reserved 20% of the pro-rata loan amount for Notes not accompanied with an estoppel letter, and 50% of the loan amount for Notes for which estoppel letters were not received.

According to Zalka's unrebutted affidavit, Ecoban had no knowledge of any claims or defenses against the Note, especially since Ratkowski made all payments due through the date Ecoban became the holder.

According to an affidavit by Ratkowski's attorney, Ratkowski first became aware of Ecoban's possible purchase of his Note in mid-September, 1987, upon receipt of a letter from Kinderhill requesting that the limited partners sign the estoppel letter. Ratkowski did not agree to execute the estoppel letter, and heard nothing further from Ecoban or Kinderhill until receipt of the demand letters from Ecoban claiming that Ratkowski was in default.

Ratkowski has not paid to Ecoban the March and September 1988 installments due pursuant to the Note—a total of $30,485.20—despite due demand.

*Holder in Due Course*

According to U.C.C. § 3–302(1), a holder in due course is:

a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Ecoban took Ratkowski's Note as partial collateral for the loan, and thus satisfies 3–302(1)(a). *See Corporacion Venezolana*

---

1. Schedule 4.12 provides:
   The general partners have been advised that an attorney named Herbert Beigel intends to commence an action against Thomas Martin and Kinderhill. The proposed litigations purportedly will involve allegations of violations of federal securities laws, New York partnership law, breach of fiduciary duty and mismanagement. The general partners believe that any such action will be totally without merit and intend to vigorously contest such action.

*de Fomento v. Vintero Sales Corporation,* 452 F.Supp. 1108, 1118 (S.D.N.Y.1978).

However, Ratkowski contests Ecoban's assertion that it became the holder of the Note in good faith and without notice of any defenses against it or claim to it on the part of Ratkowski. Specifically, he contends that there are disputed issues of fact as to whether Ecoban had knowledge of fraud claims asserted against the Kinderhill defendants in *Thornock v. Kinderhill* and *Bruce v. Martin.*

Ratkowski claims that Ecoban had knowledge of the fraud claims against Kinderhill, purchased the Notes on a package basis, conducted due diligence of Kinderhill, and insisted on a waiver of claims as a pre-requisite to transfer of the Notes, thereby raising an issue of fact as to its knowledge of the conduct underlying the fraud claim. Schedule 4.12 specifically disclosed the limited partners' fraud claims that were ultimately pleaded in *Bruce,* and Ecoban's senior officer for the Kinderhill transaction testified at deposition that he had reviewed the schedule before closing.

Under New York law, the burden of a holder in due course to establish good faith and lack of notice in taking a financial instrument is slight. *See First International Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 465 N.Y. S.2d 888, 892, 452 N.E.2d 1216, 1220 (1983). Unless it can be shown that Ecoban had *actual* knowledge of fraudulent conduct by Kinderhill inducing Ratkowski to execute his Note, Ecoban is a holder in due course. *See Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 481, 411 N.E.2d 1339, 1341 (1980) (in order to negate holder in due course status, the holder must have had *actual* knowledge of the defense, not just "reason to know)." *See also Corporacion Venezolana de Fomento v. Vintero Sales Corporation,* 452 F.Supp. at 1119 ("[b]ad faith ... is obviously something far more extreme than a failure to observe reasonable commercial standards or the standards of a reasonably prudent man..... 'It is nothing less than guilty knowledge or willful ignorance.'") (citation omitted); *Hall v.*

*Bank of Blasdell,* 306 N.Y. 336, 118 N.E.2d 464 (1954).

Further, "good faith" is defined as "'honesty in fact in the conduct or transaction concerned.'" *Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 90, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339, 1341 (1980). The inquiry as to good faith:

> is not whether a reasonable banker in [the bank's] position would have known, or would have inquired concerning the alleged breach by [ ] of its partnership duties, but rather, the inquiry is what [the bank] itself *actually knew.* If [the bank] did not have actual knowledge of some fact which would prevent a commercially honest individual from taking up the instrument, then its good faith was sufficiently shown.

*Id.* (emphasis added). *See also First International Bank of Israel, Ltd. v. L. Blankstein & Son, Inc. et al.,* 59 N.Y.2d 436, 465 N.Y.S.2d 888, 452 N.E.2d 1216 (1983).

Therefore, the relevant question is whether the information in Schedule 4.12 concerning the proposed lawsuit sufficed to give Ecoban actual knowledge of defenses to the Note. The notice in 4.12 does not state that the projected lawsuit had anything to do with the Notes that Ecoban was accepting as security for its loan.

Further, even if Schedule 4.12's notice constitutes suspicious circumstances, such circumstances do not defeat the rights of a holder in due course. *See Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811, 817–18 (S.D.N.Y.1985); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 452 F.Supp. 1108 (S.D.N.Y.1978). Similarly, a holder of a note "does not owe to the party who puts negotiable paper afloat the duty of active inquiry...." *Manufacturers & Traders Trust Co. v. Sapowitch,* 296 N.Y. 226, 230, 72 N.E.2d 166, 168 (1947); *see also Chemical Bank of Rochester,* 432 N.Y.S.2d at 481, 411 N.E.2d at 1341 (holding that Chemical had no obligation as a purchaser of negotiable paper to investigate the financial position of the transferor or the progress of the underlying investment). Here, Ecoban conducted an investigation of Kinderhill and the sta-

tus of various related entities and did not seek to avoid any knowledge of possible defenses against the Note. No case has been cited that holds that one loses status as a holder in due course by being apprised of the possibility of litigation.

Ratkowski has submitted no admissible evidence to support a charge that Ecoban accepted the Notes in bad faith. Indeed, Zalka's uncontradicted deposition testimony indicates that it would have been ludicrous for Ecoban knowingly to lend nearly $2 million to someone running a ponzi scheme.

As for the contention that Ecoban's seeking of estoppel letters from the 67 investors in Kinderhill, there is no evidence that the estoppel letters had anything to do with knowledge of fraud rather than simply being greater security for the loan.

*Conclusion*

Because no material issue of fact exists, Ecoban's motion for summary judgment motion is granted.

It is so ordered.