KEY BANK, N.A., Plaintiff,

v.

Scott D. SANDERSON,
et al., Defendants.

KEY BANK, N.A., Plaintiff,

v.

Rik Albert BLYLEVEN,
et al., Defendants.

KEY BANK, N.A., Plaintiff,

v.

Daniel PETRY, et al., Defendants.

KEY BANK, N.A., Plaintiff,

v.

Robert W. MOSS, et al., Defendants.

Nos. 89 Civ. 3826 (RWS), 89 Civ. 3827 (RWS), 89 Civ. 3923 (RWS) and 89 Civ. 3926 (RWS).

United States District Court,
S.D. New York.

Sept. 18, 1991.

Hiscock & Barclay, Albany, N.Y. (T. Paul Kane, of counsel), for plaintiff.

Beigel & Sandler, Ltd., New York City (Karl J. Stoecker, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Key Bank N.A. ("the Bank") has moved under Rule 56, Fed.R.Civ.P. for summary judgment granting the relief sought in its complaint against the four individual defendants ("the Defendants"), the makers of certain promissory notes assigned to the Bank ("The Notes"). For the reasons set forth below the motion is denied.

*Prior Proceedings*

These actions to recover on the Notes were commenced in the Supreme Court of the State of New York and thereafter removed to the United States District Court for the Northern District of New York. An order was filed transferring these actions to this court, and they have been consolidated for purposes of discovery, a substantial portion of which has been accomplished in these actions and in the related cases, *Schick v. Ernst & Whinney*, 90 Civ. 1005 (RWS), *Thornock v. Kinderhill Corp.*, 88 Civ. 3978 (RWS), *Ecoban Capital, Ltd. v. Ratkowski*, 88 Civ. 5848 (RWS), and *Bruce v. Martin*, 87 Civ. 7737 (RWS), all of which relate to similar transactions entered into by the Kinderhill Corporation ("Kinderhill") and the Kinderhill Farm limited partnerships (the "Limited Partnerships"), the founder, president and principal officer of which was Thomas Martin ("Martin"). However, the deposition of neither Martin nor that of Peter Arlund ("Arlund"), a loan officer of the Bank alleged to have knowledge of the transactions at issue, has been completed.

The Bank now contends that it is entitled to summary judgment as a holder in due course of the Notes because no issue of fact exists that would show that it had knowledge of the alleged underlying fraud.

The related actions have given rise to a series of memorandum opinions, familiarity with which is assumed. *See, e.g., Schick v. Ernst & Whinney*, 90 Civ. 1005, 1991 WL 61074 (S.D.N.Y. April 5, 1991); *Schick v. Ernst & Whinney*, 90 Civ. 1005, 1991 WL 8543 (S.D.N.Y. Jan. 18, 1991); *Thornock v. Kinderhill Corp.*, 87 Civ. 7737, 1990 WL 52180 (S.D.N.Y. April 13, 1990); *Thornock v. Kinderhill Corp.*, 749 F.Supp. 513 (S.D.N.Y.1990); *Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123 (S.D.N.Y.1989); *Ecoban Capital Ltd. v. Ratkowski*, 712 F.Supp. 1120 (S.D.N.Y.1989), *aff'd*, 909 F.2d 1472 (2d Cir.1990); *Bruce v. Martin*, 712 F.Supp. 442 (S.D.N.Y.1989).

This motion was heard and considered submitted on May 23, 1991.

*The Facts*

The Defendants executed the Notes payable to Kinderhill Farm Breeding Program—1986 Series II Limited Partnership (the "1986 Series II Partnership") after having received and read the Private Placement Memorandum ("PPM") relating to that limited partnership. Thereafter, the Notes were assigned to the Bank by the 1986 Series II Limited Partnership pursuant to the terms of a written instrument dated August 4, 1987. By letter dated December 16, 1987 and forwarded by registered mail, the Defendants were duly notified that the Notes had been assigned to the Bank and that payments were to be made directly to the Bank as they came due.

The Defendants in each action made the initial interest payments on the Notes but failed to make the payments of principal and interest due on September 30, 1988. They have made no payments since that date, despite the Bank's demands.

Kenneth P. McGivney ("McGivney"), the loan officer at the Bank responsible for accepting the assignment of the Notes, has testified that as of August of 1987, the Bank had outstanding loans to between seven and nine Kinderhill Partnerships and that, taken together, the various Kinderhill entities constituted one of the Bank's larg-

est accounts. McGivney was acquainted with the structure of and interrelationship between the Kinderhill Partnerships. In reviewing the scores of loan transactions between the Bank and various Kinderhill entities, particularly the Kinderhill Partnerships, he had read the PPMs, partnership financial statements, and other partnership documents for the particular partnerships.

McGivney also was kept current as to the status of the assets held by the Kinderhill Partnerships in connection with his constant monitoring of the collateral held by them as security for bloodstock and crop loans. His review of partnership financial statements revealed each interpartnership transaction between the Kinderhill Partnerships and he was aware that the Kinderhill Partnerships were buying broodmares privately, in some cases from each other, at prices higher than their appraised value.

Over the course of the Bank's relationship with Kinderhill, McGivney met with Martin on over one hundred occasions as well as with Thomas Gibbs ("Gibbs"), then comptroller of Kinderhill.

*Summary Judgment is Not Appropriate*

*The Standard for Summary Judgment*

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. If the opponent succeeds in establishing "uncertainty as to the true state of [even one] material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

*A Factual Issue Exists With Respect to the Bank's Knowledge of the Alleged Fraud*

It is the position of the Bank on this motion that it had no knowledge of any fraudulent conduct by Martin or Kinderhill, that it is a holder in due course, and that it is in the same position as the bank in *Ecoban*, 712 F.Supp. at 1123 (holding that Ecoban Capital Ltd. was holder in due course).

U.C.C. § 3–302(1) provides that a holder in due course is:

a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Kinderhill's alleged fraud inducing the Defendants to issue the Notes was recently the subject of this court's decision in *Bruce*, which denied a motion to dismiss the claims of defendants there.

The gravamen of the complaint in *Bruce* was that the Kinderhill Partnerships, including the 1986 Series II Partnership, engaged in repeated interpartnership bloodstock transactions at inflated prices determined by Kinderhill. These private transactions contravened the representations made in the PPM that the partnerships were to engage in transactions in bloodstock through the normal public and private channels.

A factual issue has been created as to the Bank's awareness of this situation by McGivney's assertion in his affidavit that interpartnership transactions were entirely proper, that the sales of animals between and among the Kinderhill Partnerships constituted only 3% to 4% of all sales, and that the PPMs sufficiently revealed all aspects of the transactions of the limited partnerships. Defendants maintain that the financial statements of the 1986 Series II Partnership openly demonstrate that all of its assets were purchased from other Kinderhill Partnerships. Accordingly, there is at the very least an issue of fact with respect

to the propriety of the scheme and the Bank's knowledge of Kinderhill's allegedly fraudulent intent arising out of the relationship between the Bank and Martin.

In view of this evidence, this motion is distinguishable from others in the related cases in which this court has declined to find that various lenders and/or assignees were aware of the alleged underlying fraud.

First, the association between McGivney, and thus the Bank, and Kinderhill and the Kinderhill Partnerships distinguishes this motion from that under consideration in *Ecoban*, 712 F.Supp. 1120 (S.D.N.Y.1989). In *Ecoban* the only evidence that Ecoban Capital Ltd. ("Ecoban"), the holder of a number of investor notes as security for a loan to Kinderhill Select Bloodstock, Inc., had knowledge of the alleged underlying fraud was a disclosure in the loan agreement that litigation had been threatened against Martin and Kinderhill, *id.* at 1121 & n. 1, and the existence of a standard waiver of claims Ecoban insisted upon as a prerequisite to transfer of the notes at issue in that case. *Id.* at 1122.

This motion is also distinguishable from that under consideration in *Schick v. Ernst & Whinney*, 90 Civ. 1005 (RWS) (Jan. 18, 1990). There, this court granted the Bank's motion to dismiss the aiding and abetting charge against it partly because the plaintiffs' allegations that the Bank was aware of the alleged underlying fraud were merely conclusory. The plaintiffs had alleged that the Bank "knew or should have known" of the alleged fraud because the PPMs had been "made available to the Bank." That allegation was unsupported, however, by any facts from which to conclude anyone at the Bank actually had reviewed the PPMs. In contrast, Defendants here have presented evidence that clearly establishes such a review by McGivney.

In addition to evidence of actual knowledge by McGivney, evidence also has been adduced from which it might be inferred that the Bank had incentives to continue lending to Kinderhill in August of 1987 to protect the investment the Bank had already made in Kinderhill. According to McGivney, the Tax Reform Act of 1986 severely impacted the ability of the Kinderhill Partnerships to raise money. By April of 1987 Kinderhill was having difficulty making the interest payments on outstanding loans. Concurrently, the value of the collateral held by the Kinderhill Partnerships was decreasing such that the Bank concluded by late 1987 that it was insufficient to support the outstanding loans. These factors may indicate that the bank decided to make the loan to the 1986 Series II Partnership to help Kinderhill weather the current recession so that its outstanding loans would not be a total loss.

While this court held in *Schick*, 90 Civ. 1005, that speculation as to the Bank's motive in supplying financing to the Kinderhill entities failed to establish any intention by the Bank to *aid* in the alleged fraud, this scenario does raise issues as to the Bank's knowledge.

In sum, McGivney's affidavit and deposition testimony establish that the Bank was aware of Kinderhill's activities when it became a holder of the Notes, thus creating an issue of fact with respect to the Bank's awareness of the alleged fraud and thus as to its status as a holder in due course.

*Conclusion*

Because the Bank had knowledge of certain of the facts alleged to constitute the fraud in this action, a triable issue has been created as to whether or not the Bank was a holder in due course. The motion for summary judgment is therefore denied.

It is so ordered.