GENERALE BANK, NEW YORK BRANCH, Plaintiff,

v.

Bernard V. WASSEL, Defendant.

91 Civ. 1768 (PKL).

United States District Court, S.D. New York.

Dec. 2, 1991.

Jaffe and Asher, New York City (Ira N. Glauber, Gregory E. Galterio, of counsel), for plaintiff.

Beigel & Sandler, New York City (Marilyn Neiman, of counsel), for defendant.

OPINION AND ORDER

LEISURE, District Judge.

This diversity action is currently before the Court on the parties' cross-motions for

a change of venue and summary judgment. Defendant Bernard V. Wassel ("Wassel"), a Maryland resident, moves the Court, pursuant to 28 U.S.C. § 1404(a), for a change of venue to the United States District Court for the District of Maryland. Plaintiff Generale Bank, New York Branch ("Generale"), cross-moves the Court for summary judgment, claiming that there exist no disputed issues of material fact, and that it is entitled to judgment as a matter of law. For the following reasons, the parties' cross-motions are denied in their entirety.

## BACKGROUND

This action arises out of a purported investment by Wassel in Southampton Resort Co-op Associates ("Southampton"), a New York limited partnership. However, as will become apparent, the parties' theories of the case, and the facts they consider to be relevant, are in sharp dispute.

According to Generale, this is a straightforward action by a bank seeking to recover on a promissory note. Generale contends that, on January 5, 1989, Wassel executed a $180,000 promissory note ("Note") in favor of Southampton. The Note was assigned, on March 6, 1989, to U.S. Note Corporation ("U.S. Note"), a New York corporation, as collateral for a bridge loan made to Southampton. Subsequently, on March 24, 1989, Generale purchased the Note from U.S. Note as part of a transaction wherein Generale extended a loan to Southampton, secured by investor notes. Wassel made his first quarterly payment on June 6, 1989. However, Generale claims that Wassel has been in default on the Note since he failed to make the quarterly payment due on September 6, 1989.

In contrast, Wassel asserts that the Note on which Generale is suing was fraudulently procured. Wassel contends that he was contacted, on January 4, 1989, by Ronald Samuel ("Samuel"), a salesman for Island Planning Corporation of America, who allegedly was not properly registered pursuant to Maryland securities laws. Wassel claims that he and Samuel discussed a pro-spective investment by Wassel in Southampton, and that Samuel represented that he would send to Wassel a packet of papers which, if executed by Wassel, would reserve a unit in Southampton and serve as an application for financing for the purchase. According to Wassel, he received a Federal Express package from Samuel on January 5, 1989, containing a series of signature pages, which Samuel had told him needed to be signed and returned immediately. Wassel asserts that, in reliance on this time limit, he executed the documents without any knowledge of their true contents, in the belief that they were merely an application for financing that reserved his right to invest in one unit of Southampton.

In fact, the documents Wassel executed on January 5, 1989 were the Note, a Subscription Agreement concerning Southampton, an Estoppel Letter, an Investor Note Security Agreement, a Suitability Questionnaire, a Financial Statement and a Specific Power of Attorney, which authorized changes to these documents. Further, it is clear from the face of a number of the documents that they concerned a promissory note, and not an application for financing. *See, e.g.,* Estoppel Letter ("the obligation evidenced by his Note is his valid and binding obligation, and [the undersigned] agrees to make payment thereof"). Wassel claims that he subsequently was informed that, to qualify for financing for the first unit, he would have to purchase a second unit for cash. Accordingly, Wassel wrote a check for $192,000 for the purchase of a second unit. Thereafter, claims Wassel, the documents he had executed on January 5, 1989 were altered without his permission.

On May 8, 1989, Wassel filed a complaint in the United States District Court for the District of Maryland, claiming that he was fraudulently induced to invest in Southampton. On March 14, 1991, Generale brought the instant action seeking to recover on Wassel's obligation under the Note. Wassel has moved the Court to transfer the instant action to the District of Maryland, where his action is pending. Gene-

rale opposes this motion, and moves the court for summary judgment on its action to collect on the Note.

## DISCUSSION

A. *Section 1404(a) Transfer*

The Court first considers defendant's motion for a change of venue under 28 U.S.C. § 1404(a). Section 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This section "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). Its purpose "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen*, *supra*, 376 U.S. at 616, 84 S.Ct. at 809 (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 1474, 1475, 4 L.Ed.2d 1540 (1960)).

The moving party bears the burden of showing that a change of venue is appropriate under section 1404(a). *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989). Some of the factors for the Court to consider in making this decision include the plaintiff's choice of forum, the convenience of the parties and witnesses, the ease of access to proof and the availability of process to compel the presence of unavailable witnesses. *See Employers Ins. of Wausau v. Triton Lines, Inc.*, 708 F.Supp. 54, 56 (S.D.N.Y.1989).

1. General Considerations

Wassel's motion for a change of venue begins by pointing to the action that he filed in Maryland in 1989, which was supposed to go to trial on October 15, 1991.[1] Wassel asserts that the Maryland suit involves the same facts, transactions or occurrences as the instant action, and that a change of venue will avoid duplicative litigation. When suits involving the same parties and transactions are filed in different districts, "the first suit should have priority." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). However, Generale Bank is not a party to the Maryland suit, and the two actions appear to be distinct: the Maryland action involves Wassel's claim that he was the victim of fraud, whereas the instant suit is an action by a lender to recover on an unambiguous promissory note. Moreover, the allegations in the two actions are inconsistent. Before this Court, Wassel claims that he had no knowledge of the content of the documents he was signing, and that he believed he was merely applying for financing; in contrast, in the Maryland action he asserts that he "determined to invest in the Partnership" as early as December 1988, and "invested in one unit" by filling out "subscription documents." Complaint in the United States District Court for the District of Maryland ¶¶ 15–17.

Another factor to be considered by the Court is the convenience of the parties and witnesses and ease of access to proof. In this regard, plaintiff asserts that all of its witnesses and documents are in New York. The events resulting in Generale's purchase of the Note occurred in New York, and the partnership and its sponsors are all located here. To support his motion for a change of venue, Wassel cites the objection of his key witness, who lives in New York, to being deposed in the New York action, because he has already been deposed in the Maryland action. However, even this factor weighs in favor of plaintiff, since process is available to compel the witness to be present at a deposition and

---

**1.** The Court has been informed by Marilyn Neiman, Esq., counsel for defendant, that the Maryland trial has been postponed, and no new trial date has been set.

trial in New York, which is his state of residence.

Ultimately, the only factor that defendant cites that clearly weighs in his favor is his residence in Maryland, and this factor is insufficient to overcome these other factors, including plaintiff's choice of New York as a forum. *See Factors, supra,* 579 F.2d at 218 (respecting plaintiff's choice of forum). Based on this balancing of factors, the Court finds that Wassel has not carried his burden of showing that a section 1404(a) transfer would be proper, and his motion for a change of venue is denied.

### 2. Choice of Forum Clause

■ In addition to the factors enumerated above, which convince the Court that the case should remain in New York, the Court also must examine the impact on venue of the forum selection clause signed by Wassel. As a threshold matter, this inquiry poses two choice of law issues. First, the Court finds that federal law controls the role of the forum selection clause in the section 1404(a) inquiry. *See Stewart, supra,* 487 U.S. at 32, 108 S.Ct. at 2245 ("federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case"). Thus, "[t]he presence of a forum-selection clause ... will be a significant factor that figures centrally," though the Court also must give weight to the "fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id. But see Carnival Cruise Lines, Inc. v. Shute,* — U.S. —, 111 S.Ct. 1522, 1529, 113 L.Ed.2d 622 (1991) (Stevens, J., dissenting) (criticizing enforcement of forum selection clause because cruise liner "forc[es] this choice on its passengers").

■ The second choice of law inquiry relates to whether federal or state law determines whether a forum selection clause should be invalidated as the product of fraudulent misrepresentation. In his dissenting opinion in *Stewart,* Justice Scalia asserted that "the question of what weight should be given the forum-selection clause can be reached only if as a preliminary matter federal law controls the issue of the validity of the clause between the parties." *See Stewart,* 487 U.S. at 35, 108 S.Ct. at 2246 (Scalia, J., dissenting). However, this Court believes that *Stewart* only addresses the weight that a forum selection clause should receive in the section 1404(a) inquiry, and does not mandate creation of a body of federal common law concerning fraudulent procurement of forum selection clauses.[2] *See id.* at 31, 108 S.Ct. at 2245 ("forum-selection clause ... should receive neither dispositive consideration ... nor no consideration ... but rather the consideration for which Congress provided").

Therefore, the Court follows the Rules of Decision Act, 28 U.S.C. § 1652, and finds that state law controls whether the forum selection clause was fraudulently procured. Both plaintiff and defendant rely on New York law in their various memoranda of law. This reliance concludes the choice of law inquiry, and the Court finds that New York law controls the inquiry into whether there was fraud in the procurement of the forum selection clause. *See Tehran–Berkeley Civil and Envtl. Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989).

■ The forum selection clause at issue in the instant case is printed on the signature page of the Note, which is the only page that Wassel claims to have received. *See* Brief of Defendant Bernard B. Wassel in Support of Motion for Change of Venue ("Defendant's Motion"), at 2. On this signature page, directly above Wassel's signature, appears the following language:

> This Note shall be binding upon the successors, heirs and assigns of the undersigned. This Note may be assigned, transferred or pledged without the consent of the undersigned.... For any dispute arising under this Note or in

---

**2.** This result distinguishes *Stewart* from *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 2, 92 S.Ct. 1907, 1909, 32 L.Ed.2d 513 (1972), where the Court, sitting in admiralty, applied federal common law to determine if a choice of forum clause was fraudulently procured.

connection herewith, the Payor hereby irrevocably submits to, consents to, and waives any objection to, the jurisdiction of the ... United States Courts for the Southern District of New York.

However, Wassel asks the Court to find that this forum selection clause is invalid because he was defrauded, and because he signed the Note in the belief that it was part of an application to determine his creditworthiness, and not a binding obligation to invest in the partnership and repay the Note.

The Courts have long been faced with the problem of people seeking to avoid the legal impact of their signatures. In the seminal case of *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 170 N.E. 530, 531 (1930) (citations omitted), the New York Court of Appeals addressed the issue as follows:

> Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case, the writing binds him.... If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.... The conclusiveness of the writing, however, is not avoided, if the signer, in crediting the representation made, has in any wise been negligent.

*See also Marine Midland Bank N.A. v. Embassy East, Inc.*, 160 A.D.2d 420, 553 N.Y.S.2d 767 (1st Dept.1990); *Sterling Nat'l Bank & Trust Co. v. I.S.A. Merchandising Corp.*, 91 A.D.2d 571, 457 N.Y.S.2d 58 (1st Dept.1982); *Humble Oil & Refining Co. v. Jaybert Esso Serv. Station, Inc.*, 30 A.D.2d 952, 294 N.Y.S.2d 190 (1st Dept. 1968).

While Wassel concedes that the forum selection clause was on the same page as his signature, he claims that the clause was "adhesive" because "he had no knowledge of the actual nature of the waiver and was misled as to the contents of the documents." Defendant's Motion, at 6. However, this argument is circular, and fails to demonstrate that Wassel was unable to understand the documents he was signing or excused from inquiring into their meaning. The clause was written in plain English and printed directly above Wassel's signature. Wassel was obligated to read the forum selection clause and he is conclusively bound by his signature on this document.

Moreover, Wassel does not fall into any of the exceptions stated in *Pimpinello* and its progeny. If Wassel did not read the document he signed, his actions were grossly negligent. Further, Wassel was neither blind nor illiterate, and even if the forum selection clause were in "alien language," the Court would find that he acted negligently in signing the document without further inquiry. The signature page of the Note states that "This *Note* shall be *binding.*" Note, at 3 (emphasis added). Given the plain language on the face of the signature page, the Court finds, as a matter of law, that it was negligent for Wassel to rely on the alleged representation that he was signing a financing application.

The Court thus finds that the choice of forum clause is an enforceable allocation of the burden of litigation expenses as between the parties to the Note. Since the Court found above that defendant has failed to meet his burden of proving that a section 1404(a) transfer is justified, the presence of a valid choice of forum clause only lends further support to this finding.

The Court also finds that venue in the Southern District of New York is proper. First, 28 U.S.C. § 1391(a)(3) provides for venue where the defendant is subject to personal jurisdiction. Wassel is properly before the Court because the forum selection clause is enforceable, and he has consented to jurisdiction here. *Cf. Carnival Cruise Lines, supra*, 111 S.Ct. at 1526–28 (upholding forum selection clause in cruise ticket). Further, Generale has demonstrated that Wassel is subject to personal juris-

diction under N.Y.C.P.L.R. § 302(a)(1), and Wassel has not controverted this showing. Moreover, whereas section 1391(a)(2) provides for venue in a district where "a *substantial* part of the events ... giving rise to the claim occurred" (emphasis added), Wassel only contends that "[t]he *majority* of the events ... took place in Maryland." Defendant's Motion, at 7 (emphasis added). This assertion does not undermine Generale's showing that the partnership and its sponsors are located in New York, and that a substantial part of the events resulting in its purchase of the Note occurred here. Because the balance of factors militates towards keeping the case in the Southern District of New York, and because venue is proper here, the section 1404(a) motion is denied.

B. *Generale Summary Judgment Motion*

1. Summary Judgment Standard

The Court next turns to Generale's summary judgment motion. Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The substantive law governing the case identifies the material facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir.1991). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2554; *see Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

Once a motion for summary judgment is properly made, the burden shifts to the nonmoving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & H. Ry. v. Consolidated Rail Co.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), *cert. denied*, — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed mate-

rial facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

2. Validity of Estoppel Letter

Generale Bank moves for summary judgment based on Wassel's execution of an Estoppel Letter which provided that:

> The undersigned acknowledges that the Lender is functioning solely as a lender in this transaction, and has made no representations or recommendations whatsoever concerning the Partnership or the investment of the undersigned therein.... The undersigned [also] warrants that the obligation evidenced by his Note is his valid and binding obligation, and agrees to make payment thereof in accordance with the terms of said Note, without counterclaim or setoff, without regard to any defenses, counterclaims or rights to setoff that the undersigned may have or hereafter acquire against the Partnership, any general partner thereof or any other person in connection with the investment of the undersigned in the Partnership, all of which defenses, counter claims [sic] and rights to setoff are, for the benefit of the Lender, its successor and its assigns, hereby expressly waived.

If the Estoppel Letter is a valid agreement as between the parties, it will overcome Wassel's affirmative defense of fraud to the Note and entitle Generale to judgment as a matter of law: Wassel's contractual acknowledgement that the Lender made no representations or recommendations would preclude him from proving fraud, because he would be unable to show that Generale made any representations on which he relied. *See Jo Ann Homes at*

*Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969) (fraud entails knowingly false representation that victim relies on to his detriment).

This framework for considering Wassel's affirmative defense of fraud is embodied in a series of New York cases beginning with *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 602–04, 157 N.E.2d 597, 599–600 (1959). *Danann* involved a purchaser's claim of reliance on a seller's misrepresentations. However, the purchaser had signed a contract stating that it had not relied on any representations. The Court of Appeals held that:

> plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations.... [T]he plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations. Plaintiff admits then that it is guilty of deliberately misrepresenting ... its true intention.

*Danann* was followed by *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 309, 485 N.E.2d 974, 974 (1985), which held that:

> Fraud in the inducement of a guarantee ... is not a defense to an action on the guarantee when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee, or any other circumstance which might otherwise constitute a defense available to a guarantor in respect of the guarantee, those recitals being inconsistent with the guarantors' claim of reliance upon an oral representation.[3]

---

**3.** Whereas *Danann* involved specific contractual language, the contract in *Plapinger* only used the terms "absolute and unconditional." Nevertheless, the Court of Appeals enforced the guar- antee without regard to the alleged fraud, because the contract was the product of negotiations between sophisticated business people

In *Plapinger* the Court of Appeals affirmed the grant of summary judgment despite the existence of disputed issues of material fact, because the contractual language expressly waived reliance on the misrepresentations as to which there existed factual disputes. This precedent is well settled, and the Appellate Division routinely affirms grants of summary judgment that rely on an unconditional guarantee and waiver of defenses. *See, e.g., Graubard Mollen Dannet & Horowitz v. Edelstein,* 173 A.D.2d 230, 569 N.Y.S.2d 639 (1st Dept.1991); *Manufacturers and Traders Trust Co. v. Mega–B, Inc.,* 169 A.D.2d 632, 564 N.Y.S.2d 765 (1st Dept.1991). In fact, the Appellate Division often reverses the Supreme Court and grants summary judgment on an unconditional guarantee and waiver of defenses, even though the lower court has discerned disputed issues of fact. *See, e.g., Bull & Bear Group, Inc. v. Fuller,* 170 A.D.2d 275, 565 N.Y.S.2d 807 (1st Dept.1991); *Citizens and S. Commercial Corp. v. Catapano,* 164 A.D.2d 812, 559 N.Y.S.2d 543 (1st Dept.1990); *Bank Leumi Trust Co. v. D'Evori Int'l, Inc.,* 163 A.D.2d 26, 558 N.Y.S.2d 909 (1st Dept. 1990).

One recent case that very closely parallels the facts of the case at bar is *First City Nat'l Bank and Trust Co. v. Heaton,* 165 A.D.2d 710, 563 N.Y.S.2d 783 (1st Dept. 1990). In *Heaton,* the defendant signed a "borrower's letter" that waived defenses and warranted that the guarantor had not relied on any representations by the bank. Following *Plapinger,* the First Department affirmed the Supreme Court's grant of summary judgment, and allowed the bank to recover on the promissory note. *See id.,* 563 N.Y.S.2d at 784.

Although the Second Circuit has not had the opportunity to address the scope of

*Plapinger,* it has applied *Danann.* Thus, in *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 735 (2d Cir. 1984), the Second Circuit found that:

> *Danann* ... stands for the proposition that where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship. Animated by principles of traditional contract interpretation, the rule of *Danann* has exhibited great resilience in the face of efforts to delimit its expanse.

In fact, *Grumman* went beyond the specific holding of *Danann,* and refused to create a far-reaching exception to *Danann* where the disclaimer itself is induced by fraud. Rather, the Court found that the only defense to an unconditional waiver of defenses is "where the party against which the disclaimer is asserted is entirely unaware of the existence of the disclaimer— for example, where the disclaimer is inserted surreptitiously into the final draft of the contract." *Grumman, supra,* 748 F.2d at 737.[4]

This broad reading of the *Danann/Plapinger* rule has also been applied by the Courts of the Southern District of New York, with guarantors being held to an unconditional guarantee and waiver of defenses. *See, e.g., Thornock v. Kinderhill Corp.,* 749 F.Supp. 513, 519 (S.D.N.Y.1990); *Midwest Corp. v. Global Cable, Inc.,* 688 F.Supp. 872, 875 (S.D.N.Y.1988). However, some Courts of the Southern District have been more circumspect in applying this precedent. *See Federal Ins. Co. v. Mallardi,* 696 F.Supp. 875, 884 (S.D.N.Y.1988) (allowing discovery into relationship between bank raising waiver and party obtaining guarantee); *Northwestern Nat'l Ins. Co. v. Alberts,* 717 F.Supp. 148, 154–55 (S.D.N.Y.1989) (requiring specific disclaimer); *Schneider v. OG & C Corp.,* 684

who knowingly bargained for an unconditional obligation.

**4.** The Court rejects Wassel's attempt to rely on this exception to *Danann.* Wassel was obligated to read the one-page Estoppel Letter before signing it. *See Pimpinello, supra,* 170 N.E. at 531. Moreover, he does not fall within an exception to *Pimpinello,* because reliance on a representation that the waiver was an application for fi-

nancing was negligent. The Letter plainly provides that "the obligation evidenced by his Note is his valid and binding obligation, and [the signor] agrees to make payment thereof in accordance with the terms of said Note." Having read this language, signing the Letter without inquiry was negligent, precluding reliance on the *Pimpinello* and *Danann* exceptions.

F.Supp. 1269, 1273 (S.D.N.Y.1988) (requiring specific waiver with respect to guaranty); *cf. Hunt v. Bankers Trust Co.,* 689 F.Supp. 666, 674–75 (N.D.Tex.1987) (applying New York law).

Before applying these precedents to the case at bar, the Court pauses to consider *Goodridge v. Harvey Group, Inc.,* 728 F.Supp. 275, 285–86 (S.D.N.Y.1990), and its state court counterpart, *Goodridge v. Fernandez,* 121 A.D.2d 942, 505 N.Y.S.2d 144 (1st Dept.1986). In the state court opinion, the First Department affirmed a stay of the case pending resolution of the Southern District action. In its opinion, the Appellate Division also stated in *dicta,* over a spirited dissent by Justice Kupferman, that the case was not controlled by *Plapinger,* because "the guaranty here, in contrast to the guaranty in [*Plapinger*], contains no specific disclaimer of defenses available to the guarantor with respect to the guaranty." 505 N.Y.S.2d at 147. Nevertheless, when the case came to judgment in the federal court, Judge Lasker rejected this *dicta* and granted summary judgment against the guarantor, holding that the disclaimer was sufficiently specific under *Plapinger,* and that the guarantor was precluded from raising a fraudulent inducement defense. 728 F.Supp. at 285–86. Given the ultimate holding in *Goodridge,* that the disclaimer was valid and binding, and the sweeping interpretation that *Plapinger* has been given in recent years, it is clear that the Appellate Division's *Goodridge dicta* is not a strong precedent on which a party should rely.[5]

■ By citing *Plapinger* and producing copies of relevant documents bearing Wassel's signature, Generale has shown that it is entitled to judgment as a matter of law. The burden thus shifts to Wassel, who begins by asserting that Generale has not demonstrated a legal basis for the relief it seeks. The Court first rejects this argument to the extent that it relies on the state court opinion in *Goodridge.* The Court next rejects Wassel's claim "that a general release executed without knowl-

edge of a specific fraud is ineffective to release a claim or defense based on the fraud." Memorandum of Defendant Wassel in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Response"), at 20. *Goodridge* does not stand for this proposition, and *Rockwood Computer Corp. v. Morris,* 94 F.R.D. 64, 68 (E.D.N.Y.1982), which Wassel also cites, is inapposite because it involved a fiduciary who was obligated to reveal all material facts. Further, the Court rejects Wassel's reliance on *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957), which held that a general merger clause does not bar introduction of parole evidence in an action to rescind a contract. Given the intervening case-law, *Sabo* is simply inapposite in deciding whether Wassel's signing of the Estoppel Letter was a binding juridical act.

### 3. Existence of Disputed Issues of Material Fact

■ The Court next turns to examine the issues of fact raised in opposition to the summary judgment motion. Wassel first claims that there is an issue of fact concerning whether he knowingly signed the documents he received on January 5, 1989. See Affidavit of Bernard V. Wassel, sworn to on June 26, 1991 ("Wassel Aff.") ¶¶ 10–20. However, the Court found above that Wassel is conclusively bound by his signature on the Estoppel Letter, and that he is not within any of the *Pimpinello* exceptions. Wassel's contention that he was prevented from properly understanding the Estoppel Letter, because he was instructed to sign the documents without delay, also must fail. There is no exception to *Pimpinello* for those who sign documents in a hurry, and giving an offeree a short timespan within which to make a decision does not constitute duress or justify rescission of a contract. *See 805 Third Ave. Co. v. M.W. Realty Assoc.,* 58 N.Y.2d 447, 461 N.Y.S.2d 778, 780, 448 N.E.2d 445, 447 (1983) (duress requires showing that party "was compelled to agree to contract terms

---

5. The Court notes that both *Schneider, supra,* 684 F.Supp. at 1273, and *Northwestern Nat'l Ins.,* *supra,* 717 F.Supp. at 154–55, rely on *Goodridge,* and therefore rest on an unstable foundation.

because of a wrongful threat by the other party which precluded the exercise of its free will"); *Graubard Mollen, supra,* 569 N.Y.S.2d at 640 (rejecting duress defense and enforcing note based on unconditional guaranty).

Given Wassel's signature on the Estoppel Letter, which waives all defenses to enforcement of the Generale debt, the Court need not pause long to consider the factual issues that are raised with respect to the Note itself. For example, Wassel claims that he "was fraudulently induced to invest in two units of Southampton," by a salesman who allegedly was not registered in accordance with Maryland securities laws. Defendant's Statement Pursuant to Local Civil Rule 3(g), at 2. In addition, he asserts that his Suitability Questionnaire and Financial Statement were altered. *See* Wassel Aff. ¶¶ 21–28. However, these defenses contradict Wassel's waiver of defenses in the Estoppel Letter, and will not be considered. The Court finds that even if there are disputed issues of fact on these matters, the controlling law dictates that these issues are not material, and do not preclude a grant of summary judgment.

In contrast, the Court is more troubled by Wassel's claim that the Estoppel Letter was materially altered. *See* Defendant's Response, at 22; Wassel Aff. ¶¶ 19 & 20. Generale claims, quite forcefully, that Wassel signed a Specific Power of Attorney form that authorized the insertion of dates, names of lenders, amounts of loans and other pertinent information into the documents relevant to this case. The Court here recalls its earlier holding, that Wassel is bound by his signatures on the Estoppel Letter and the Forum Selection Clause despite his claims that he did not receive full copies or read the forms. However, in those instances the relevant language was printed on the very page that Wassel signed. On the other hand, the Specific Power of Attorney is a two-page document,

and all of its relevant language is contained on the page that Wassel did not sign.

The Court therefore finds that there exists an issue of fact concerning whether Wassel was aware that he was authorizing insertion of dates and names in the instruments he was signing.[6] Further, because *Grumman Allied Indus., supra,* 748 F.2d at 737, provides for a defense to a disclaimer when additional clauses are "inserted surreptitiously into the final draft of the contract," this issue of fact is material. The Court believes that a reasonable factfinder would likely infer, even on the papers currently before the Court, that Wassel authorized the alterations that were made to the documents. However, the issue is one of fact, and the Court is unable to resolve it at this juncture as a matter of law. Generale's summary judgment motion therefore must be denied.

### 4. Generale's Status as a Holder in Due Course

■ Generale next asserts that it is a holder in due course, and that Wassel's defense of fraud in the inducement is not a valid defense against it. In response, Wassel asserts that Generale's status as a holder in due course involves disputed issues of fact.

Holder in due course status is governed by N.Y.U.C.C. § 3–302. Section 3–302(1)(c) requires that the instrument be taken "without notice ... of any defense against or claim to it on the part of any person." New York law imposes only a slight burden on one attempting to establish that it is a holder in due course. *See, e.g., First Int'l Bank, Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 465 N.Y.S.2d 888, 452 N.E.2d 1216 (1983). Thus, "testimony of the holder that it had no knowledge of a defense to the note in issue [is] sufficient to sustain its burden on that point and to require the defendant to come forward with evidence to directly controvert the holder's testimony." 465 N.Y.S.2d at 892,

---

**6.** Nevertheless, the Court rejects Wassel's suggestion that he "cannot be held to have waived [defenses] to Generale who was not even named in the Estoppel Letter." Defendant's Response, at 22. The Estoppel Letter clearly provides that the waiver covers "the Lender, its successors or assigns."

452 N.E.2d at 1220. To carry his burden, Wassel must prove that Generale had actual knowledge, and not just a "reason to know," of the alleged fraud. *Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 481, 411 N.E.2d 1339, 1341 (1980); *see also Ecoban Capital Ltd. v. Ratkowski,* 712 F.Supp. 1120, 1122 (S.D.N.Y.1989).

It is, of course, possible that Wassel will be unable to show that Generale had actual knowledge of the allegedly fraudulent conduct. However, Wassel has not had the opportunity to depose witnesses with personal knowledge of the Southampton/Wassel transaction. The officers of Generale and Intercontinental Monetary Corp., an affiliate of U.S. Note, who have been deposed, David C. Fraenkel and Edward L. Landsman, did not have personal knowledge of the transaction. However, they named four officials, Leslie Rogers, Jonathan Bakker, Neil Pomper and Debra Courtright, who may have personal knowledge of the transactions. See Affidavit of Marilyn Neiman, Esq., sworn to on July 8, 1991, Exh. A, at 50–51, 59–62, 146; Exh. B, at 7–11.

Fed.R.Civ.P. 56(f) allows the Court to deny a summary judgment motion if the party opposing the motion has not had the benefit of full discovery. *See Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir. 1989). Wassel has demonstrated that further discovery is required before summary judgment is appropriate, and the Court also denies Generale's motion on this basis. However, this opportunity to conduct further discovery is not to be construed as a "fishing expedition." *See Heaton, supra,* 563 N.Y.S.2d at 784. The Court therefore refers the case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 72 for supervision of all remaining discovery.

## CONCLUSION

After exhaustive consideration of the parties' briefs, it has become obvious to the Court that Wassel faces an uphill battle in his effort to avoid the impact of his signa-ture on the documents produced to the Court in this case. Nevertheless, the Court believes that summary judgment at this time is improper. For the foregoing reasons, the motions for a change of venue and for summary judgment are both denied in their entirety.

SO ORDERED.