**FMG, INC., James Christensen, Stephen Christensen, F. Lavar Christensen, James Hamel, and Jerry Hamel**

v.

**FOREST ELECTRIC CORP. and JWP Credit Corp.**

**Civ. A. No. 91–1337.**

United States District Court, E.D. Pennsylvania.

July 14, 1992.

FMG, Inc., pro se.

Richard L. Bazelon, Bazelon & Less, Philadelphia, Pa., for defendants.

### MEMORANDUM

GILES, District Judge.

Defendant JWP Credit Corp. ("JWP") has filed a motion for summary judgment on its counter-claim against individual plaintiffs James Christensen, Stephen Christensen, F. Lavar Christensen, James Hamel, and Jerry Hamel ("Plaintiffs" or "Guarantors"). JWP seeks to enforce the terms of guaranties [1] which the Plaintiffs made on a loan and security agreement between co-plaintiff FMG, Inc. ("FMG") and JWP. This court grants JWP's motion for summary judgment for the reasons stated below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

FMG is a Utah corporation which agreed to operate an entertainment complex as an anchor tenant at Franklin Mills, a shopping plaza located in Philadelphia. FMG con-

---

**1.** Since the guaranties are identical in their terms, references to *the* guaranty are to be read as if all Plaintiffs had signed the same one.

tracted with defendant Forest Electric Corporation ("Forest Electric") for the electrical work necessary to construct the entertainment complex.[2]

According to the complaint, FMG's mall space was made available to it several months later than anticipated. As a result, it was under extreme time pressure to complete its facilities so that they would be ready for the mall's grand opening. FMG avers that Forest Electric knew of this time pressure and nevertheless performed substandard work which caused a series of delays and overruns. The result was a three-month time lag between the opening of the mall and the opening of the entertainment facility, and a resultant loss in potential revenues. FMG also claims that Forest Electric's subpar work caused it to incur additional bills from other subcontractors because they were not able to perform their work according to schedule.

In addition to alleging substandard work on the part of Forest Electric, FMG claims that Forest Electric deliberately exploited FMG's vulnerable position by submitting inflated bills. FMG claims that it was coerced into paying these bills with threats that the electrical power in its mall space would be shut off. According to the complaint, electrical power was in fact shut off for one six-hour period.

FMG further alleges that co-defendants Forest Electric and JWP exploited FMG's position by forcing it to enter into a credit arrangement with JWP, which is the sole shareholder of Forest Electric. Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, Exhibit C at 5. JWP provided FMG with a loan of $500,000 to facilitate payment of monies owed to Forest Electric for electrical work. Plaintiffs executed a joint personal guaranty on the loan. FMG argues that, due to the self-serving tactics of Forest Electric, it had no

other option but to enter into the loan agreement.

FMG and Guarantors filed suit against Forest Electric and JWP on June 28, 1991. Based upon the above-mentioned allegations, they allege misrepresentation and fraud, economic duress, mistake of fact, breach of contractual duty of good faith and fair dealing, and conspiracy to defraud. FMG seeks restitution of payments made to Forest Electric, rescission of its loan agreement with JWP, and other damages (Counts I–V). Guarantors seek a declaration that the guaranty agreement is null and void (Count VI).

In response to the amended complaint (filed before defendants answered the original complaint), JWP filed a counter-claim seeking to enforce the guaranty agreement against the individual plaintiffs, since FMG had by that time defaulted on its payments under the loan agreement.[3] JWP has now moved for summary judgment on the counter-claim.[4]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be entered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the moving party which must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party makes such a showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must satisfy this burden through the intro-

---

**2.** At the time of the contract FMG was known as 49th Street Galleria, Inc., and Forest Electric was Forest Electric Corp. of Pennsylvania.

**3.** JWP is currently unable to press a counter-claim against FMG, which has filed for bankruptcy protection.

**4.** Counts I–V, lodging the abovementioned claims by FMG against Forest Electric and JWP, have been referred to arbitration pursuant to the construction agreement between FMG and Forest Electric. Those claims are being heard by the American Arbitration Association in Case No. 14 110 0006 92 C/J.

duction of testimony "as would be admissible in evidence," *Id.*, such as an affidavit or deposition testimony. Fed.R.Civ.P. 56(c). If, however, the moving party ultimately persuades the court that there are no genuine issues of material fact, then the court must decide whether the law dictates an outcome in favor of the moving party. If so, the motion for summary judgment must be granted.

## III. DISCUSSION

It is undisputed that JWP provided FMG with $500,000 based upon the loan agreement signed by FMG and the accompanying guaranty agreement signed by Plaintiffs. This money was used to pay outstanding bills submitted by Forest Electric. It is also undisputed that FMG has defaulted on its payments under the loan agreement. Such default triggers Plaintiffs' obligations pursuant to the personal guaranty, which provides that, in consideration of the loan made to FMG, each Guarantor

> ... jointly and severally unconditionally and irrevocably guarantees to Lender, its successors and assigns, full and prompt performance and payment of all obligations of Borrower to Lender owing and incurred under the Loan and Security Agreement, and agrees to indemnify Lender against any loses [sic] and/or expenses, including, but not limited to legal expenses, incurred as a result of any default or other failure to perform by Borrower or ... Guarantor.

Defendants' Memorandum in Support of Motion for Summary Judgment ("Defendants' Memorandum"), Exhibit 7.

Plaintiffs argue that the guaranty does not apply because they were fraudulently induced by Forest Electric and JWP to execute the guaranty and the underlying loan. They argue that they were intentionally overbilled, and that the debts accruing from such billing, together with the consequent late opening of FMG's entertainment complex, put FMG in a position of severe economic vulnerability. Plaintiffs allege that Forest Electric in turn exploited FMG's vulnerable position by insisting on immediate payment and by seeking to facilitate such payment through the credit arrangement with JWP. JWP is alleged to have known of FMG's situation and to have worked together with Forest Electric to coerce FMG and Guarantors into the financing arrangement at issue. Plaintiffs argue that the guaranty is therefore null and void.

JWP responds with a multi-tiered challenge to Guarantors' position. It argues, first, that the guaranty's unconditional language nullifies the effect of any defenses which might otherwise be available to Guarantors. It argues, second, that a defense of fraudulent inducement or economic duress, if available, could only be available against Forest Electric, and not against JWP. It argues, third, that, in any case, FMG has not offered sufficient evidence to raise the possibility of fraudulent inducement or economic duress by any party.

Each of these three arguments poses a hurdle which Guarantors must clear in order to avoid summary judgment. As demonstrated *infra*, Guarantors can not even clear the first hurdle, and JWP is accordinlgy entitled to summary judgment. Thus, the court need not examine how Guarantors would fare if faced with the second and third hurdles.

■ The unconditional nature of the personal guaranty is unambiguous:

> This Guaranty shall be an absolute, continuing, and unlimited guaranty without regard to (a) the validity, legality or enforceability in whole or in part of the Loan and Security Agreement; (b) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement to the Loan and Security Agreement, including, but not limited to, the grant of additional security to Lender by Borrower; (c) any insolvency, bankruptcy, liquidation, reorganization, arrangement, composition, dissolution, receivership or other similar proceeding involving or affecting Borrower or relief granted pursuant to any statute now or hereafter in force; or (d) any setoff, counterclaim or any circumstances which might constitute a defense

or discharge of ... Guarantor, and without abatement, suspension, deferment, diminution on account of any occurrence whatsoever. This guaranty is an irrevocable and unconditional guaranty of payment and not of collectibility and Lender shall not be required to proceed first against Borrower or any other entity or any collateral before resorting to ... Guarantor.

Defendants' Memorandum, Exhibit 7. According to this language the clear intent of the guarantor is to act as an unconditional surety of the Borrower, FMG. Indeed, the guaranty is made "without regard to ... the validity, legality or enforceability in whole or in part of the Loan and Security Agreement." *Id. Even if* the loan agreement were fraudulently induced, its illegality would not invalidate the guaranty agreement.

This conclusion is mandated by the substantive law of New York, which applies in this case.[5] In the leading case of *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985), New York's highest court held that defenses otherwise available are barred where the guarantor has made its commitment unconditional. In *Plapinger* the guarantor argued that its guaranty had depended upon receipt of an additional multimillion dollar line of credit pledged in a separate oral agreement. The court rejected this argument and reaffirmed the holding of *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), in which the court had barred a guarantor's defense of fraud in the inducement where the guarantor had specifically waived reliance upon the allegedly fraudulent statements.

The court went on to expand the rule of *Danann* by stating:

[F]ollowing extended negotiations between sophisticated business people, what has been hammered out is a multimillion dollar personal guarantee proclaimed by defendants to be "absolute and unconditional." It is unrealistic in

such circumstances to expect an express stipulation that defendants were not relying on a separate oral agreement to fund an additional multimillion dollar line of credit, when they themselves have denominated their obligations unconditional, and have reinforced that declaration by their agreement that the "absolute and unconditional" nature of their guarantee was "irrespective of (i) any lack of validity ... of the ... Restated Loan Agreement ... or any other agreement or instrument relating hereto", or "(vii) any other circumstance which might otherwise constitute a defense" to the guarantee.

*Plapinger*, 495 N.Y.S.2d at 312, 485 N.E.2d at 977. It is likewise unrealistic here to expect Guarantors to disclaim the specific defenses of fraudulent inducement and economic duress where they themselves have denominated their guaranty as "absolute, continuing, and unlimited ... without regard to ... the validity, legality or enforceability in whole or in part of the Loan and Security Agreement". Defendants' Memorandum, Exhibit 7.

Plaintiffs try to distinguish *Plapinger* by arguing that the guaranty here is more like the one at issue in *Goodridge v. Fernandez*, 121 A.D.2d 942, 505 N.Y.S.2d 144 (1986). In *Goodridge* the court ruled that the guarantor could raise a defense of fraudulent inducement since the guaranty did not contain a specific waiver of that defense. The court distinguished *Plapinger* by arguing that the disclaimer of defense therein was more specific and was therefore worthy of enforcement, unlike the disclaimer before it.

The waiver here, however, is no less specific than the waiver in *Plapinger*. As a comparison of the two waivers manifests, *see supra*, they are quite similar in language and in scope. The waiver language cited and relied upon by the court in *Goodridge* is more general, although the court did not cite the waiver in its entirety. 505 N.Y.S.2d at 145. Thus, even on its

---

**5.** Both the loan agreement and promissory note specify that New York substantive law should

apply to disputes arising thereunder, and all parties agree as to these clauses' enforceability.

face, the *Goodridge* decision does not help Guarantors.

Moreover, *Goodridge* itself is at odds with *Plapinger* (which was handed down by a higher court) and has been discredited in subsequent cases. The issues before the *Goodridge* court proceeded to judgment in federal district court, *sub nom., Goodridge v. Harvey Group, Inc.*, 728 F.Supp. 275 (S.D.N.Y.1990). The federal court ruled therein that, according to *Plapinger,* the guarantor's defense of fraudulent inducement had in fact been waived by virtue of the guaranty's disclaimer. Indeed, the district court cited the disclaimer more fully than had the New York state court, revealing that the waiver at issue closely resembled the waiver in *Plapinger* (and the waiver here). There was therefore no basis to distinguish *Goodridge* from *Plapinger.*[6] *See also Generale Bank v. Wassel*, 779 F.Supp. 310, 317–19 (S.D.N.Y.1991) (given the sweeping application that *Plapinger* has been given by New York courts, *Goodridge* does not serve as good precedent).

 The rule of *Plapinger* remains in full force. *Id.* A general, unconditional guaranty suffices to waive specific defenses such as fraudulent inducement. Guarantors are accordingly barred from raising defenses of fraudulent inducement and economic duress, and JWP is entitled to summary judgment.[7]

An appropriate order follows.

### ORDER

AND NOW, this 13th day of July, 1992, it is hereby ORDERED that:

1. The motion for summary judgment on the counter-claim filed by JWP Credit Corp. is GRANTED.

2. Summary judgment is ENTERED in favor of defendant JWP Credit Corp. and against plaintiffs James Christensen, Stephen Christensen, F. Lavar Christensen,

---

6. This was persuasively pointed out by the dissent in *Goodridge,* 505 N.Y.S.2d at 148.

7. Without analyzing JWP's other arguments (hurdles two and three) in detail, it is readily apparent that Guarantors have offered no concrete support for the proposition that JWP is

James Hamel, and Jerry Hamel, in the amount of $525,451.31, with interest thereon at 15% beginning May 19, 1992, plus reasonable attorney's fees and expenses incurred in defending against Count VI of the Amended Complaint and in pressing the counter-claim.

3. Count VI of the Amended Complaint is DISMISSED as to defendant JWP Credit Corp pursuant to the above memorandum.

5. This matter is marked CLOSED.

party to any fraud or duress which may have been applied to Guarantors, if any was applied at all. Thus, there is neither injustice nor inequity in applying the rule of *Plapinger* to the personal guaranty.